New Rivieria Arts Theatre and H. W. Hill, Plaintiffs in Error,

***v.***

State of Tennessee, ex rel. Edward E. Davis, Defendants in Error.

412 S.W.2d 890.

(*Knoxville*, September Term, 1966.)

Opinion filed February 15, 1967.

654

DWAYNE D. MADDOX, Huntingdon, EDWARD A. RUDLEY, Philadelphia, Pa., of counsel, for plaintiffs in error.

FRIERSON M. GRAVES, JR., Memphis, Amicus Curiae.

GEORGE F. McCANLESS, Attorney General, and THOMAS E. FOX, Assistant Attorney General, Nashville, for defendants in error.

MR. JUSTICE CHATTIN delivered the opinion of the Court.

Edward E. Davis, District Attorney General for the Sixth Judicial Circuit, filed this petition against the defendants, New Rivieria Arts Theatre of Chattanooga,

Tennessee, and its manager, H. W. Hill. The petition sought a temporary injunction enjoining the defendants from showing or disposing of the film "London Night Life" or any other film or acquiring other such films. The petition also prayed the temporary injunction be made permanent after a hearing and a determination the films complained of were obscene.

Upon the filing of the petition, the trial court ordered the clerk to issue a temporary injunction as prayed. The clerk issued the injunction and it was served on the defendants on the same day the petition was filed, March 9, 1966.

The defendants filed their answer on April 4, 1966. On April 6, 1966, the defendants filed a motion to dissolve the injunction on the ground they were being deprived of their property without due process of law by an unconstitutional application of the obscenity statute, T.C.A. Section 39-3005. On the same day, the defendants filed a motion to set the case for trial within two days as provided by T.C.A. Section 39-3005(b). The trial judge overruled the motion to dissolve the temporary injunction. He deferred action on the motion to set the case for trial until the respective parties had agreed in writing that the issues were joined.

After a full hearing on April 18 and 19, 1966, at which the parties offered witnesses and the trial judge was shown the film, "London Night Life," the trial judge found this film and others as well as certain previews to be obscene material under T.C.A. Section 39-3007.

Accordingly, he entered a decree which provides in part:

"From the testimony of the State's witnesses, from the viewing by the court of the film, 'London Night Life,' and from the testimony of the defendant, H. W. Hill, and the defense expert witness, Prof. Joseph Life, 'Wife Swappers,' 'Days of Sin' and 'Nights of Nymphomania,' 'One Shocking Moment,' 'Bare and Beautiful' and several 'Coming Attractions,' or 'Trailers' on some of these films, are 'obscene material' under the definition in Tennessee Code Annotated, Section 39-3007.

\* \* \* \* \* \*

"It is, therefore, ordered, adjudged and decreed, pursuant to the authority in Tennessee Code Annotated, Section 39-3005 (c) that the defendants, New Rivieria Arts Theatre of Chattanooga, Inc., and H. W. Hill, be permanently enjoined from the further or future showing of the films herein mentioned before, and other films and 'Coming Attractions' or 'Trailers' of the sort, kind or type which may be classified by the court as 'obscene material' under the definition of Tennessee Code Annotated, Section 39-3007."

Defendants were granted a broad appeal to this Court and have assigned seven errors.

The first assignment of error contends that T.C.A. Section 39-3005(a) does not authorize an injunction, temporary or permanent, enjoining the showing of any and all films by the parties sought to be enjoined.

The State insists this question has become moot and should not be considered by this Court. That is, the temporary injunction is not in effect and the permanent injunction does not enjoin or prohibit defendants from

showing films other than those the trial judge found to be obscene.

■ While the rule that this Court will not decide a moot question is applicable when the question for determination affects only rights and claims personal to the parties, an exception is well recognized when interest of a public character and of importance in the administration of justice generally are involved. *McCanless v. Klein*, 182 Tenn. 631, 188 S.W.2d 745 (1945). Because the question involves a determination of public rights or interests under conditions which may be repeated in the future, we will consider the question.

The statute, T.C.A. Section 39-3005(a), provides:

"The circuit, chancery, and criminal courts of this state have jurisdiction to enjoin the sale or distribution of obscene material as hereinafter specified:

"(a) The district attorney-general, in any district where a person, firm or corporation sells, distributes, exhibits or displays, or is about to sell, distribute, exhibit or display, or has in its possession with the intent to sell, distribute, exhibit or display any material which is obscene, as hereinafter defined, may maintain an action for an injunction against such person, firm or corporation in the circuit, chancery or criminal court of the county in which said sale, distribution, exhibition, display or possession occurred, and to prevent such sales, distribution, exhibition or display or further sales, distribution, exhibition or display, or the further acquisition of any such material."

■ Motion pictures are within the basic protection of the first and fourteenth amendments to the Federal Constitution. *Kingsley International Picture Corp. v.*

*Regents of University of State of N. Y.,* 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959).

■ A State has power to prevent the distribution of obscene material. *Smith v. People of State of California,* 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959), reh. den. 361 U.S. 950, 80 S.Ct. 399, 4 L.Ed.2d 383.

■ Whether proscribed conduct in regard to obscene matters is to be visited by a criminal prosecution or by a qui tam action or by an injunction, or by some or all of these remedies in combination is a matter within the legislature's range of choice. *Kingsley Books, Inc., v. Brown,* 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957).

■ Material which is, in fact, obscene may be proscribed in a number of ways provided the proscription, whatever it may be, is imposed in accordance with constitutional standards. *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

■ The temporary injunction sought by the petition and granted by the trial judge enjoined defendants from showing any and all films obscene or otherwise. The purpose of the statute is to prevent the dissemination of the obscene material and not to close a business or theater.

■ It is our opinion the statute clearly comprehends injunctions only against the display or sale of obscene material.

We agree with defendants' insistence the interpretation and application of the statute by the trial court was erroneous. The granting of the temporary injunction prohibiting the defendants from showing any film had the effect of closing the theater and was an unconstitu-

tional application of the statute in violation of defendants' constitutional rights of freedom of speech and due process.

By defendants' fourth assignment of error it is insisted the trial judge erred in failing to hold the application of the obscenity statute sought by the petition of the District Attorney General was unconstitutional in violation of the first, fifth and fourteenth amendments to the Federal Constitution.

The petition of the District Attorney General alleged generally the defendants had been showing obscene films. The only film specifically named in the petition, and shown to be in the possession of the defendants, was the film, "London Night Life."

■ It is our opinion the statute clearly comprehends injunctions only against specific material. That is, obscene material, which a defendant is selling or displaying or is about to acquire and sell or display or has in his possession with the intent to sell or display.

■ To prevent the display or sale of obscene materials under the statute, the District Attorney General must bring an action against each and every item the display or sale of which he seeks to enjoin. The petition must name or clearly identify the material the defendant is displaying or selling or is about to acquire and sell or display or has in his possession with intent to sell or display.

The petition sought a temporary injunction prohibiting the defendants from showing any films whether obscene or not. In other words, the petition sought to close the theater.

■ We agree the application of the statute sought by the petition was unconstitutional in violation of defendants' rights under the first, fifth and fourteenth amendments to the Federal Constitution.

■ The second assignment contends the trial judge was in error in admitting certain evidence by the State into the record. Specifically, the argument is directed to the testimony as to trailers and previews of coming attractions as not competent to aid in the determination of whether the films, as a whole, were obscene.

T.C.A. Section 39-3006 provides:

"In any action or prosecution under Sections 39-3003 or 39-3005 or any laws of this state wherein the question of the obscenity of any material is an issue it shall be admissible in evidence, among other things, to show:

"(a) the character of the audience for which the material was designed or to which it was directed;

"(b) what the predominant appeal of the material would be for ordinary persons; and what effect, if any, it probably would have on the conduct of such persons;

"(c) artistic, literary, scientific, educational or other merits of the material;

"(d) the degree of public acceptance of the material in the United States;

"(e) appeal to prurient interest, or absence thereof, in advertising or other promotion of the material;

"(f) the good repute of the author, creator, publisher or other person from whom the material origi-

nated, which evidence of good repute may be rebutted by the prosecution.

"Expert testimony relating to factors entering into the determination of the issue of obscenity shall be admissible, including the testimony of the author, creator, publisher, or other person from whom the material originated."

Subsection (e) permits evidence of "advertising or other promotion of the material."

Of course, evidence of previews of films alone is not admissible to determine whether the particular films, as a whole, are obscene; because such evidence would be clearly incompetent for that purpose. But we think such evidence is relevant to the determination of the ultimate question of obscenity. An appeal to the prurient interest of the public by advertising or other promotion of the material has been held to be relevant to the question of obscenity.

In the case of *Ginzburg v. United States,* 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966), it was said that evidence of pandering, which is defined to be the commercial exploitation of the prurient interest of the public, reinforces the decision that an item is obscene.

The finding of pandering in the Ginzburg case was the basis upon which the court affirmed the conviction even though the material might not be determined to be obscene in the abstract.

■■ The third assignment complains of the action of the trial judge in permitting the evidence of films and previews which had previously been shown by the defendants and were not shown to be in the possession of

the defendants nor about to be acquired or shown by the defendants.

We think T.C.A. Section 39-3005 authorizes an injunction to restrain the future sale or display of obscene material. It would be an idle gesture to enjoin that which has already occurred.

T.C.A. Section 39-3003 makes it a misdemeanor for a person "to knowingly sell, distribute, display or exhibit" obscene material. Thus, the state is not without a remedy under the obscenity statute where a person has knowingly displayed or sold obscene material.

 The fifth assignment of error insists the trial judge erred in decreeing a permanent injunction prohibiting defendants from showing "other films and coming attractions or trailers of the sort, kind, or type which may be classified by the court as obscene material under the Tennessee Code Annotated Section 39-3007," because this portion of the decree is in violation of defendants' rights under the first, fifth and fourteenth amendments to the Federal Constitution.

The statute does not authorize an injunction to restrain the acquisition and display of unidentified films, coming attractions or trailers which a court might in the future hold to be obscene. Such a construction of the statute would vest in the courts an unlimited power of prior restraint on the freedom of speech and press.

Such an interpretation would also place the burden upon the defendants of determining whether any film they might acquire might be classified by the court as obscene material.

The burden is on the District Attorney General to show the material sought to be enjoined from sale or display

is unprotected by the first amendment to the constitution of the United States. *Freedman v. State of Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

We agree this portion of the decree is obviously in violation of the first, fifth and fourteenth amendments to the Federal Constitution. *Kingsley Books, Inc. v. Brown*, supra.

Defendants' sixth and seventh assignments have for their basis the trial court erred in failing to sustain their motion to dismiss the petition at the conclusion of the State's evidence; and that it was error for the trial judge to decree the film, "London Night Life," was obscene because the State failed to show by a preponderance of the evidence the film was, in fact, obscene.

The record in this case shows that the trial judge heard testimony of witnesses for the respective parties and also was shown the film, "London Night Life." Although the bill of exceptions states that it contains all the evidence adduced at the hearing, the film is not included nor does it appear as an exhibit in this record. Thus, the bill of exceptions is incomplete.

Where a bill of exceptions states, "this is all the evidence," but as here the record shows there was other evidence not included in the bill of exceptions, not copied into, nor made an exhibit thereto, then the judgment of the lower court must be affirmed. If the bill of exceptions discloses the fact that material evidence heard in the lower court upon a controverted issue is not included, the judgment on such issue must be affirmed. *State for Use and Benefit of Henderson County ex rel. v. Stewart*, 46 Tenn.App. 775, 326 S.W.2d 688 (1958); *Wilson v. Tranbarger*, 218 Tenn. 208, 402 S.W.2d 449 (1965).

We must conclude, in the absence of a bill of exceptions, that the finding of the trial judge the film, "London Night Life," is an obscene picture was supported by competent and material evidence.

 Finally, we should point out it was error for the trial judge to refuse defendants' motion to set the hearing within two days after they filed their answer to the petition.

T.C.A. Section 39-3005(b) provides in part: "Where a temporary injunction has been issued, trial shall be held within two (2) days after joinder of issues and in such instances the court shall render its decision within two (2) days after the conclusion of the trial."

This provision of the statute is mandatory. The issues were joined when the defendants filed their answer and it was error for the trial judge to refuse to set the hearing within two days thereafter on the assumption the issues were not joined until Counsel for the respective parties stated in writing the issues were joined.

From what we have hereinabove said makes it necessary for us to modify the decree of the trial court. The action of the trial court in finding the film, "London Night Life," obscene and permanently enjoining defendants from further or future showing of the film and ordering the Sheriff to destroy the same is affirmed.

The remaining portions of the decree are reversed. The cause is remanded for the modification of the decree as indicated and for the enforcement thereof. Defendants will pay the costs.

BURNETT, CHIEF JUSTICE, DYER and CRESON, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.