Guinn Franklin DOCKERY, Quay Dockery, Joe Dockery, Bobby Dockery, Chris Dockery, and Edith Buckner, Appellees,

v.

Della DOCKERY, Dr. Yutaka Kato, and Gary Gerbitz, Appellants,

and

Vickie Dockery and Laura Ann Dockery, Appellees.

Court of Appeals of Tennessee, Eastern Section.

July 27, 1977.

Certiorari Denied by Supreme Court Dec. 12, 1977.

J. Tucker Montgomery, Hixson, John D. Lockridge, Jr., Knoxville, for Dr. Yutaka Kato.

Gary Gerbitz, Dist. Atty. Gen., Floyd E. Morgan, Chattanooga, for Franklin Dockery, et al.

W. Neil Thomas, III, Chattanooga, for Della Dockery.

James M. Haley, IV, Chattanooga, for the minor children of Della Dockery.

PARROTT, Presiding Judge (E.S.)

## OPINION

This is an appeal from an action for declaratory judgment commenced by the family of Della Dockery to determine if Mrs. Dockery's husband could be appointed her guardian with authority to remove her from a life-sustaining respirator. In the final decree, the chancellor appointed Mr. Dockery conservator for his wife and declared that Della Dockery's treating physician had no authority to continue the use of the respirator, without the family's consent, upon determining in accordance with professional standards of medicine in his community that: (1) there is no reasonable possibility of the patient ever emerging from the comatose condition; and (2) there is no reasonable possibility that the medical treatment that requires the invasion of the incompetent's body will cure the patient, who is otherwise terminally ill. Appeals were perfected by the guardian ad litem for Della Dockery, by Dr. Kato, Mrs. Dockery's attending physician, and by the Attorney General however; Mrs. Dockery died while the appeal was pending and the question of mootness has been raised.

On November 12, 1976, Della Dockery was admitted to Erlanger Hospital with asthmatic bronchitis, pulmonary emphysema, and a collapsed lung. She was transferred to the intensive care unit and placed on a respirator because of her pulmonary condition. At this time she was conscious and consented to the use of the respirator, a mechanism solely to assist the patient's breathing. Soon after she was placed on the respirator, Mrs. Dockery developed cardio-respiratory arrest from a massive pulmonary embolism. Doctors responded to her emergency condition by heart massage for six minutes until her vital signs returned. However, during that interval, Mrs. Dockery suffered cortical brain damage and became semi-comatose. At the request of Dr. Kato, the thoracic surgeon treating Mrs. Dockery for her respiratory condition, a neurologist, Dr. Neil Brown, examined Mrs. Dockery and found her to be decorticate:

Decorticate movement is a relatively rare type of movement to painful stimulation, which the arms come up to the

chest and the legs extend straight out. This is indicative of a higher level of brain function than what we usually see in comatose patients, which is decerebration. All of her brainstem reflexes were intact, such as her pupillary responses, her extraocular movements, some degree of swallowing, and response to stimulation in the back of the mouth. The reflexes were generally brisk, as we would expect. (Testimony of Dr. Brown.)

It was stipulated at the commencement of trial that Mrs. Dockery was not "dead" within the meaning of T.C.A. 53–459. Further, the respirator was continued because of her pulmonary condition and not her neurological condition.

Upon filing the Suggestion of Death by her husband, the appellees filed a motion to dismiss for mootness. We will limit our consideration to the motion to dismiss for mootness and the assignment by Dr. Kato that the chancellor erred in taxing the costs against him. See, *State ex rel. Lewis v. State*, 208 Tenn. 534, 537–538, 347 S.W.2d 47, 48 (1960) ("where only the taxing of the costs is involved and the major question has become moot that we will not consider the question"); and 5 Am.Jur.2d, Appeal and Error, § 767, p. 210.

■ The courts in this State have consistently followed the principle that to invoke the jurisdiction of the court it is primarily essential that there be a genuine and existing controversy requiring present adjudication of present rights. Although the case may have originally presented such a controversy, if before decision it has lost that essential character through the act of the parties or some other cause, it is the duty of the court, upon the presentment of that fact, to dismiss it. This principle was followed by Justice Burnett in *State ex rel. Lewis v. State*, supra, involving an appeal from the trial judge's denial of appellant's petition for habeas corpus following his arrest and imprisonment for public drunkenness under T.C.A. 18–410. Appellant was released from jail after the grand jury returned a no true bill against him, but before his appeal from the lower court's deni-

al of his petition reached the Supreme Court. Although the constitutionality of T.C.A. 18–410, which allows the Clerks of the General Sessions Courts to issue warrants and other process was challenged, the Supreme Court held that courts in this State have no right to render advisory opinions and where the major question has become moot, the court will not consider the question. However, in *New Rivieria Arts Theatre v. State*, 219 Tenn. 652, 412 S.W.2d 890, 893 (1967) where the Supreme Court held that the lower court's grant of a temporary injunction under T.C.A. 39–3005(a) prohibiting the showing of certain films prior to the determination that they were obscene was an unconstitutional application of that statute, the Court followed the general exception to the above-stated rule:

While the rule that this Court will not decide a moot question is applicable when the question for determination affects only rights and claims personal to the parties, an exception is well recognized when interests of a public character and of importance in the administration of justice generally are involved.

■ Consequently, an appellate court in Tennessee may entertain an appeal for final determination if it involves questions of public interest even though it has become moot so far as the particular action or parties are concerned. In *McCanless v. Klein*, 182 Tenn. 631, 188 S.W.2d 745 (1945), the Court considered the validity of certain powers of the Commissioner of Finance and Taxation in the sale and distribution of intoxicating liquors despite appellant's admission that the commissioner had the questioned authority. "The decision as to whether to retain a moot case in order to pass on a question of public interest lies in the discretion of the court and generally a court will determine a moot question of public importance if it feels that the value of its determination as a precedent is sufficient to overcome the rule against considering moot questions." 5 Am.Jur.2d, Appeal and Error, § 768, pp. 210–211. Because the general rule is to dismiss an appeal which has become moot, with the retention of such

cases in the public interest being the exception to the rule, courts are inclined to refuse dismissal only under exceptional circumstances where the public interest clearly appears.

"It is not easy to state any hard and fast rules by which questions which are of sufficient public interest to justify refusal to dismiss an appeal which has become moot . . . may be distinguished from questions which are not of such interest, since the matter rests generally in the discretion of the appellate court in each particular case." 132 A.L.R. 1188–1189. However, the starting point is to determine the meaning of "public interest." Generally, public interest "means something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals." 132 A.L.R. 1189. The types of issues the courts are likely to resolve despite their mootness are:

(1) questions that are likely to arise frequently;

(2) questions involving the validity or construction of statutes;

(3) questions relating to elections;

(4) questions relating to taxation, revenue, or governmental financial affairs;

(5) questions relating to the conduct of public officers or bodies;

(6) questions involving the governmental regulation of public utilities; and

(7) questions which must necessarily become moot before the appeal can be heard.

See the Annotation at 132 A.L.R. 1185–1190 for cases from different jurisdictions supporting each category.

■ In this State a mooted issue is within the public interest if "it is one of great public importance, as where it involves a determination of public rights or interests under conditions which may be repeated at any time." *McCanless v. Klein,* supra 188 S.W.2d at 747. We do not believe that a determination of the right of a pa-

tient's family to order the cessation of artificial means used to maintain the patient's life is a question involving a "determination of public rights or interests." On the contrary, the question presented on this appeal affects only rights and claims personal to the individual parties and does not fall within the perimeters of the exceptions as established in this State:

In Tennessee especially are the Courts restricted in their functions to a decision of controversies; that they act post factum only, and can never be called upon to prescribe in advance what lawmaking bodies shall do or in what way parties in the future shall conduct their transactions in general. Whenever they do so, they lay themselves liable to the imputation of impertinence . . . . It is wisest that we in the main adhere to the practice of deciding such questions only as arise from the facts presented to us and to bear it in mind that when we step beyond the facts and undertake to adjudge something about which there is no jural clash we are deciding something as men and not as judges. (*City of Nashville v. Hager,* 5 Tenn.C.C.A. 192, 197 [1914] in which the court, affirming the lower court judgment that a city ordinance which unreasonably restricted producers' rights to sell their products on the Public Square was invalid, refused to determine the rights of individuals to use this public area to protect them against future annoyance and interference from municipal authorities.)

We find the chancellor erred in taxing the fees of the guardian ad litem and the total costs against Dr. Kato, Mrs. Dockery's attending physician.

■ Rule 17.03 of the Tennessee Rules of Civil Procedure provides that " . . . the court may in its discretion allow the guardian ad litem a reasonable fee for his services, to be taxed as costs." The chancellor, therefore, did not err in designating the guardian ad litem fee as part of the costs of the action. However, the chancellor's order taxing the costs against Dr. Kato was erroneous and must be reversed.

Section 20–1621 of the Tennessee Code Annotated provides:

> In all civil cases, whether tried by a jury or before the court without a jury, the presiding judge shall have a right to adjudge the cost. In doing so, he shall be authorized, in his discretion, to apportion the cost between the litigants, as in his opinion the equities of the case demand.

In addition, the declaratory judgment provision in T.C.A. 23–1111 provides that "the court may make such award of cost as may seem equitable and just." The provisions give the trial court broad discretion in taxing costs to the litigants and it has long been recognized in this State that an appeal does not lie in an equity case to review the discretion of the chancellor on the question of costs unless there is a clear abuse. For cases announcing this scope of review see, *State ex rel. Wilson v. Bush, Sheriff*, 141 Tenn. 229, 234, 208 S.W. 607 (1918); *Lewis v. Bowers*, 216 Tenn. 414, 423, 392 S.W.2d 819 (1964); and *State of Tennessee and County of Davidson v. Lewis*, 78 Tenn. 168 (1882).

"Since an action for a declaratory judgment may be maintained only when plaintiff asserts rights which are challenged by defendant, where there was no controversy between the parties before the commencement of such an action, costs will not be awarded against defendants who did not challenge the rights claimed by plaintiff until after trial of the action." 20 C.J.S. Costs, § 71, p. 329. Clearly, Dr. Kato, who was joined as a necessary defendant because of his status as Mrs. Dockery's physician, should not bear the burden of the costs of a proceeding commenced by the plaintiffs to determine their authority to order that Mrs. Dockery be taken off the respirator and allowed to die. Certainly Dr. Kato was bound by his Hippocratic oath and possibly his individual sense of morality to continue his attempt to maintain Mrs. Dockery's life by the medical means at his disposal. We cannot say the equities require the costs to be taxed to Dr. Kato; rather, the equities require that all costs, including the guardian ad litem's fee, be paid by the complainants who began the action for declaratory judgment, even though they obtained the declaration sought. See, 22 Am.Jur.2d, Declaratory Judgment, § 101, p. 970, citing *Erwin Billiard Parlor v. Buckner*, 156 Tenn. 278, 283, 300 S.W. 565; *Runions v. Runions*, 186 Tenn. 25, 207 S.W.2d 1016, 1019 (1948); and *Butler v. Parker*, 200 Tenn. 603, 293 S.W.2d 174, 179 (1956) (taxing guardian ad litem fees as costs to complainants).

The assignments of error by the various appellants addressing the chancellor's final decree are dismissed for mootness with the exception of Dr. Kato's assignment of error regarding costs. For the reasons stated, all the costs are to be taxed to the original plaintiffs and the estate of Della Dockery and the cause remanded to the chancery court for the necessary actions not inconsistent with this Court's holdings.

SANDERS and GODDARD, JJ., concur.