IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 1, 1998 Session

## CHARTER LAKESIDE BEHAVIORAL HEALTH SYSTEM v. TENNESSEE HEALTH FACILITIES COMMISSION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 95-3903-III     Ellen Hobbs Lyle, Chancellor**

_____

**No. M1998-00985-COA-R3-CV - Filed January 30, 2001**

_____

This appeal involves a dispute arising out of the construction of a mental health treatment facility in Shelby County. As the facility neared completion, a corporation operating a competing facility filed a petition with the Tennessee Health Facilities Commission seeking a declaratory order that the new facility could not begin operating until it obtained a certificate of need. After the Commission declined to render a declaratory order, the competing corporation petitioned the Chancery Court for Davidson County for a declaratory judgment that the new facility could not begin operating without a certificate of need. The trial court initially dismissed the petition because of the competitor's delay in challenging the construction of the facility. After this court reversed and remanded the case for further consideration, the trial court remanded the case to the Commission to determine whether the new facility had been constructed before the certificate of need laws had been expanded to cover such facilities. On this appeal both the competing corporation and the Commission assert that the trial court erred by not rendering a declaratory judgment based on the existing administrative record. While this appeal was pending, the competing corporation sold its Shelby County facility to another corporation but retained its interest in this litigation. We have determined that this appeal no longer involves a justiciable issue because the competing corporation no longer operates a facility in Shelby County and, therefore, is not entitled to judicial relief. Accordingly, we vacate the judgment and remand the case to the trial court with directions to dismiss the petition for declaratory judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and HENRY F. TODD, SP. J., joined.

William H. West, Nashville, Tennessee, for the appellant, Charter Lakeside Behavioral Health System.

G. Ray Bratton, Memphis, Tennessee, for the appellee, Compass Intervention Center, LLC.

Paul R. Summers, Attorney General and Reporter, and Michelle Hohnke Joss, Assistant Attorney General, for the appellee, Tennessee Health Facilities Commission.

## OPINION

In early 1987, Health Industries of America, Inc. ("HIAI") decided to build a 70-bed mental health facility in Shelby County to treat adults and adolescents. Before breaking ground, HIAI sought a formal opinion from the Tennessee Health Facilities Commission concerning whether it would be required to obtain a certificate of need to operate this facility. In April 1987, the Commission opined that HIAI would not be required to obtain a certificate of need because its planned facility "did not constitute a health care institution subject to certificate of need review, as defined in Tenn. Code Ann. § 68-11-103(6)(B)(iv)." Notwithstanding this favorable opinion, HIAI did not proceed immediately with the construction of the facility.

In November 1989, a Tennessee general partnership named T.C. Company[1] purchased the land on which HIAI had planned to build its facility and began site preparation work for the new facility. However, T.C. Company soon ran into an unforeseen two-year snag. Construction was delayed from November 1990 through December 1992 because of two government-imposed moratoria stemming from a highway construction study and other unrelated wetlands concerns.

Just as the moratoria were being lifted, the future of T.C. Company's project was further complicated by the Tennessee General Assembly's decision to expand the certificate of need requirements to include mental health treatment facilities such as the one T.C. Company was building.[2] With the posture of its project somewhat in doubt, T.C. Company requested an opinion from the Commission concerning whether it was now required to obtain a certificate of need to construct its facility on the former HIAI site. In an opinion letter dated July 14, 1993, the Commission's staff informed T.C. Company that its project did not require a certificate of need because the company had taken "significant steps" to establish its proposed mental health treatment facility before the effective date of the 1993 expansion of the certificate of need requirements. The opinion letter stated that T.C. Company had expended "significant time and expense," including approximately $400,000 for the land, $50,000 for drainage work and other site preparation work, and $20,000 for architect fees, and the time and expense of obtaining local zoning approval for the facility. The opinion letter concluded that "[u]nder the circumstances, the provisions of P[ublic] C[hapter] 120, which would otherwise require a certificate of need, are inapplicable to this project, and no certificate of need is required."

T.C. Company construed this letter as a green light to complete its project, and so it commenced and continued the construction of the facility. While the construction proceeded, T.C. Company underwent several organizational changes and eventually became Compass Intervention Center, LLC ("Compass").

---

[1] The partnership was formed for the purpose of building a private mental health treatment facility to serve the Memphis market.

[2] Act of March 31, 1993, ch. 120, § 1, 1993 Tenn. Pub. Acts 176.

The project hit another snag in September 1995, just as completion of construction was in sight. Charter Lakeside Behavioral Health System ("Charter"), a competing provider of mental health, psychiatric, and alcohol and drug abuse services in Shelby County, filed a petition with the Commission seeking a declaratory order that Compass could not operate its new facility without a certificate of need. The Commission declined to entertain the petition and voted to forward it on to the Chancery Court for Davidson County. Thereafter, in December 1995, Charter filed a petition for declaratory judgment in the Chancery Court for Davidson County, asking the trial court to declare that Compass could not open or operate its mental health treatment facility without first obtaining a certificate of need from the Commission. The trial court dismissed Charter's petition on two grounds. First, it concluded that Charter had waited too long to challenge the project because Compass's facility was now licensed and opened. Second, it determined that Charter had not alleged sufficient facts to establish that it had standing to challenge Compass's new facility.

In August 1997, this court reversed the trial court's order and remanded the case for further proceedings.[3] Following our remand, the trial court sent the case back to the Commission with directions that the Commission determine whether Compass or HIAI had constructed its facility before the 1993 change in the certificate of need statutes became effective. Charter appealed this decision. In this proceeding, both Charter and the Commission assert that the trial court should have decided the case based on the contents of the administrative record and, therefore, that the trial court erred by remanding the case to the Commission for further consideration.

While this appeal has been pending, Charter filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Delaware.[4] As part of its reorganization, Charter entered into an asset purchase agreement with UHS of Lakeside, Inc. ("UHS") to purchase most of Charter's assets, including Charter's facility in Shelby County. The bankruptcy court eventually approved the agreement. Thus, UHS now owns and has assumed operating control of all of Charter's mental health treatment facilities, including the Shelby County facility that competes with Compass's new facility. The asset purchase agreement did not, however, convey Charter's rights in this declaratory judgment cause of action to UHS. To the contrary, among the assets explicitly excluded from the asset purchase agreement were "any and all contractual rights of indemnification, legal suits, claims, injunctions or other causes of action . . .."

Based on these post-judgment developments, Compass moved to dismiss Charter's appeal as moot because Charter no longer owned or operated a facility competing with Compass's facility. UHS responded by moving that it be substituted for Charter as a party in accordance with Tenn. R. App. P. 19(b). We directed both Charter and UHS to show cause why this appeal should not be dismissed because it is moot and no longer presents a justiciable issue. UHS has responded; Charter has not.

---

[3] *Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n*, No. 01A01-9611-CH-00530, 1997 WL 536924 (Tenn. Ct. App. Aug. 29, 1997) (No Tenn. R. App. P. 11 application filed).

[4] These post-judgment facts have been provided to the court in accordance with Tenn. R. App. P. 14.

# I.
## THE JOINDER OF UHS AS A NECESSARY PARTY ON APPEAL

UHS seeks to be substituted in the place of Charter on this appeal to prevent this case from becoming moot. It argues that substitution should be permitted based on either Tenn. R. App. P. 19 or Tenn. Code Ann. § 29-14-107(a) (2000). We have determined that neither the rule nor the statute provides a basis for permitting UHS to step into Charter's shoes on this appeal.

Tenn. R. App. P. 19(b) permits the substitution of a party on appeal when the substitution is made necessary because of "bankruptcy." However, the mere fact that either a party or the subject matter of the litigation becomes involved in some way in a bankruptcy proceeding is not enough to trigger a substitution under Tenn. R. App. P. 19(b). The rule was never intended to apply to circumstances such as those presented in this case. The substitutions necessitated by "bankruptcy" envisioned by Tenn. R. App. P. 19(b) consist of substitutions that would enable either a bankruptcy trustee or a purchaser of an asset from a bankruptcy estate to pursue an already pending appeal. Neither of these circumstances exist in this case. Here, neither the bankruptcy trustee nor UHS, the purchaser from the bankruptcy estate, owns or controls the asset – the declaratory judgment claim. It is still owned by Charter.

We presume that the asset purchase agreement was the result of arms-length bargaining between Charter and UHS. As the product of this bargaining, Charter and UHS agreed that Charter retained ownership of all existing legal suits or other causes of action. Private contracting is the most appropriate way for private parties to accommodate their respective interests. Accordingly, the courts customarily defer to the contracting process by giving private parties wide latitude to contract as they see fit as long as their agreements are consistent with public policy, *Third Nat'l Bank v. Olive*, 198 Tenn. 687, 693, 281 S.W.2d 675, 678 (1955), and by enforcing contracts according to their plain terms without favoring either party. *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985); *Heyer-Jordan Assocs., Inc. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. Ct. App. 1990). Permitting UHS to step into Charter's shoes for this appeal – even for the sake of "judicial economy" – would be inconsistent with the plain terms of the asset purchase agreement because, for whatever reason, Charter bargained to keep this lawsuit.[5] Charter and UHS are distinct legal entities. In light of the fact that Charter retained its stake in this proceeding, there is no legal basis for permitting UHS to intervene under Tenn. R. App. P. 19.

UHS also asserts that it should be added as a party to this appeal because it qualifies as a "necessary party" under the declaratory judgment statutes. When a declaratory judgment proceeding has been filed, Tenn. Code Ann. § 29-14-107(a) requires the joinder of "all persons . . . who have

---

[5]Private parties' rights and obligations are governed by their written agreements. *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 461 (Tenn. Ct. App. 1994). When called upon to construe a contract, the courts do not concern themselves with the wisdom or folly of the agreement, *Chapman Drug Co. v. Chapman*, 207 Tenn. 502, 516, 341 S.W.2d 392, 398 (1960); *Brooks v. Networks of Chattanooga, Inc.*, 946 S.W.2d 321, 324 (Tenn. Ct. App. 1996), and are not at liberty to relieve parties from their agreements simply because they have proved to be burdensome or unwise. *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn Ct. App. 1993).

or claim any interest which would be affected by the declaration." The courts have the discretion to determine who these parties are, *Huntsville Util. Dist. v. General Trust Co.*, 839 S.W.2d 397, 400 (Tenn. Ct. App. 1992), but once these parties have been identified, they must be joined or else the declaratory judgment action becomes nonjusticiable. *Wright v. Nashville Gas & Heating Co.*, 183 Tenn. 594, 598, 194 S.W.2d 459, 461 (1946).

There is no dispute that UHS currently owns and operates the mental health facility in Shelby County that was formerly owned by Charter. Because UHS is the current owner of the facility, there can be little question that it is one of the parties whose interests would be affected were we poised to render a declaratory judgment regarding whether Compass must have a certificate of need to operate its Shelby County facility. However, the current focus of this appeal concerns whether it has become moot. There are no necessary parties to moot appeals. Tenn. Code Ann. § 29-14-107 does not require us to substitute UHS for Charter at this juncture if the appeal has become moot and nonjusticiable. Should we dismiss this appeal without reaching the merits, we will not affect any claim UHS may have regarding Compass. Accordingly, we find no basis for substituting UHS for Charter at this stage of the proceeding.

## II.
### THE MOOTNESS OF THIS APPEAL

The various justiciability doctrines have been developed to identify appropriate occasions for judicial action. 13 Charles A. Wright, et al., *Federal Practice and Procedure* § 3529 (2d ed. 1984) ("*Federal Practice and Procedure*"). They provide the prudential principles used by the courts to assure that judicial power is used wisely and appropriately. These doctrines deal with matters such as advisory opinions, collusive lawsuits, standing, ripeness, mootness, and political questions. 12 James W. Moore, et al., *Moore's Federal Practice* ¶ 300.02[2] (2d ed. 1995); *Federal Practice and Procedure* § 3529.

In general terms, the justiciability doctrine requires that cases must involve presently existing rights, live issues that are within a court's power to resolve, and parties who have a legally cognizable interest in the judicial resolution of the issues. Thus, courts will decline to provide judicial relief in cases that do not involve genuine existing controversies requiring the adjudication of present rights, *State ex rel. Lewis v. State*, 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998), and will likewise decline to render declaratory judgments to decide theoretical questions or render advisory opinions. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn. 2000).

The requirements for litigation to continue are essentially the same as the requirements for litigation to begin. Cases must remain justiciable throughout the entire course of litigation, including the appeal. *County of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996); *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). A moot case is one that has lost its justiciablity because it no longer involves a present, live controversy. *McCanless v. Kline*, 182 Tenn. 631, 637, 188 S.W.2d 745, 747 (1945); *Cashion v. Robertson*, 955 S.W.2d 60, 63 (Tenn. Ct. App.

1997). Thus, a case will be considered moot if it no longer serves as a means to provide some sort of relief to the prevailing party. *Knott v. Stewart County*, 185 Tenn. 623, 626, 207 S.W.2d 337, 338-39 (1948); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d at 616; *Massengill v. Massengill*, 36 Tenn. App. 385, 388-89, 255 S.W.2d 1018, 1019 (1952).

Determining whether a claim has become moot is a question of law for the courts. *Orlando Residence, Ltd. v. Nashville Lodging Co.*, M1999-00943-COA-R3-CV, 1999 WL 1040544, at *3 (Tenn. Ct. App. Nov. 17, 1999) (No Tenn. R. App. P. 11 application filed); *see also Fund for Animals v. Babbitt*, 89 F.3d 128, 132 (2d Cir. 1996); *Sivak v. State*, 769 P.2d 1132, 1133 (Idaho Ct. App. 1989); *Cooper v. Town of Pinedale*, 1 P.3d 1197, 1201 (Wyo. 2000). While the declaratory judgment statutes should be construed liberally, Tenn. Code Ann. § 29-14-113 (2000), the courts should decline to issue declaratory judgments when a party no longer has a legally cognizable interest in the litigation, *Memphis Publ'g Co. v. City of Memphis*, 513 S.W.2d 511, 512 (Tenn. 1974), or when the case no longer involves live issues under presently existing facts. *West v. Carr*, 212 Tenn. 367, 380-81, 370 S.W.2d 469, 475 (1963). Stated another way, the courts should not render a declaratory judgment in the absence of a justiciable controversy. *Hester v. Music Village U.S.A., Inc.*, 692 S.W.2d 426, 427 (Tenn. Ct. App. 1985).

No one disputes that Charter, the original party seeking a declaratory judgment, no longer owns or operates a mental health treatment facility in Shelby County. Thus, Charter and Compass are no longer at odds over whether Compass should be required to obtain a certificate of need to operate its Shelby County facility. In the present circumstances, the courts can no longer provide Charter any sort of meaningful relief. A declaratory judgment rendered under these circumstances would be no more than an advisory opinion. Accordingly, based on these considerations, we find that Charter's appeal is moot.

Anticipating this outcome, UHS asserts that the courts should proceed to the merits because this case fits into one of the exceptions to the mootness doctrine. The courts have engrafted exceptions onto the mootness doctrine for cases involving important public interests or cases of importance to the administration of justice. *New Riviera Arts Theatre v. State*, 219 Tenn. 652, 658, 412 S.W.2d 890, 893 (1967); *McCanless v. Klein*, 182 Tenn. at 638, 188 S.W.2d at 747. "Public interest" cases involve something more than the rights or interests of individual members of the public. *LaRouche v. Crowell*, 709 S.W.2d 585, 587 (Tenn. Ct. App. 1985); *In re Helvenston*, 658 S.W.2d 99, 101 (Tenn. Ct. App. 1983). They generally fit into one of the following seven categories: (1) questions that are likely to arise frequently; (2) questions involving the validity or construction of statutes; (3) questions related to elections; (4) questions related to taxation, revenue, or governmental financial affairs; (5) questions related to the conduct of public officers or bodies; (6) questions involving the governmental regulation of public utilities; and (7) questions which must necessarily become moot before the appeal can be decided. *Dockery v. Dockery*, 559 S.W.2d 952, 955 (Tenn. Ct. App. 1977).

UHS argues that this case involves a matter of great public importance because it "raises issues that have to do with public bodies" and because it "involves legal questions concerning the

scope of regulation by the State." Those arguments go too far. This case is essentially a dispute between two competitors.[6] One competitor is complaining about the unfair competition of the other.[7]

We recognize that the Commission must regulate healthcare facilities in very much the same way that public utilities are regulated, *Humana of Tenn. v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 671 (Tenn. 1977), and that the Tennessee Health Planning & Resource Development Act of 1987 reflects the General Assembly's desire that competition among health care providers be kept orderly and economical. Tenn. Code Ann. § 68-11-103 (1996). However, recognizing an exception to the mootness doctrine in this case would essentially place all appeals from decisions of administrative agencies beyond the reach of the mootness doctrine. We decline to permit the exception to swallow up the doctrine. The driving forces behind this appeal are the financial interests of two for-profit healthcare providers. There is no longer a present, live dispute between these two providers -- Charter and Compass -- because economic forces have forced one of them out of the market. Accordingly, the issues raised in this appeal are moot.

## III.

When a case has become moot, our customary practice is to vacate the trial court's decision and remand the case with directions that it be dismissed. *Ford Consumer Finance Co. v. Clay*, 984 S.W.2d at 617; *McIntyre v. Traughber*, 884 S.W.2d at 138. Accordingly, we vacate the February 23, 1998 order and remand the case to the trial court with directions that Charter's complaint for declaratory judgment be dismissed. We tax the costs of this appeal in equal proportions to Charter Lakeside Behavioral Health System and UHS of Lakeside, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

---

[6] *Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n*, 1997 WL 536924, at *2 (noting that the case was a dispute arising out of competition within a local healthcare market).

[7] The original complaint for declaratory judgment alleges that Charter "competes with [the Compass facility] for mental health residential treatment facility patients" and that Charter is seeking a declaratory judgment because the Compass facility "interferes with or impairs the legal rights and privileges of Charter not to have any residential treatment facility . . . compete with it for mental health residential treatment facility patients without a ruling that such competition meets the criteria required for issuance of a CON . . .."