IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 8, 2003 Session

## CHATTANOOGA PUBLISHING COMPANY, ET AL. v. HAMILTON COUNTY ELECTION COMMISSION, ET AL.

Appeal from the Chancery Court for Hamilton County
No. 02-1296     W. Frank Brown, III, Chancellor

Filed October 31, 2003

No. E2003-00076-COA-R3-CV

In this case involving the Tennessee Public Records Act, the issue is whether the Appellee Hamilton County Election Commission should have been compelled to release to the Appellant certain records relating to the Democratic primary election in Hamilton County held on May 7, 2002. The Trial Court held that although the documents were public records, they were also investigative records of the Tennessee Bureau of Investigation ("TBI") and thus subject to the exception found at T.C.A. 10-7-504(a)(2) of the Public Records Act. We find that the records at issue were not investigative records of the TBI at the time the request was made and that they should have been released to the Appellant Chattanooga Publishing Company ("CPC"), and accordingly reverse the Trial Court's judgment to the contrary. We affirm the Trial Court's refusal to award attorney's fees to CPC.

### Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Reversed in Part; Cause Remanded

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Anthony A. Jackson and Bruce C. Bailey, Chattanooga, for the Appellants, Chattanooga Publishing Company, Tom Griscom and Andy Drury

Jerry H. Summers and Thomas Greenholtz, Chattanooga, for the Appellees, Hamilton County Election Commission and Fran Dzik, in her official capacity as Administrator of Elections

Alfred H. Knight and Alan D. Johnson, Nashville, for Amicus Curiae *The Tennesseean*

Richard L. Hollow, Knoxville, for Amicus Curiae Tennessee Press Association

### OPINION

On May 7, 2002, a primary election was held in Hamilton County. Shortly thereafter, on May 15, 2002, the Hamilton County Election Commission selected Appellee Fran Dzik as Administrator of Elections. Ms. Dzik testified that at some point shortly after the general election on November 7, 2002, she began to "receive information from various sources about some possible irregularities that may have occurred in the electoral process."

On November 18, 2002, the petitioner, CPC, requested copies of the "records as they existed on May 7, 2002 of all registered voters" in District 4 of Hamilton County. CPC also requested the records showing the names of the individuals who voted in the May 7 Democratic primary for the District 4 County Commission seat. On December 10, 2002, CPC requested, among other things, copies of all oaths of identity and fail-safe affidavits pertaining to the District 4 primary election.[1] Representatives of CPC met with Ms. Dzik in her office on December 10 and presented the request orally and in writing.

Later that same day, Ms. Dzik met with Hamilton County District Attorney General Bill Cox concerning her suspicions of possible voter fraud in District 4. Ms. Dzik had previously contacted Attorney General Cox to inform him of her concerns in this regard. Two members of the TBI were also present at this December 10 meeting.

On December 11, the next day, pursuant to the TBI's request, Ms. Dzik turned over 68 fail-safe affidavits and 11 oaths of identity, all of which were from District 4, to the TBI. The Election Commission retained copies of all the documents turned over, which are the documents at issue in this case. Ms. Dzik stated that she was instructed not to provide the records to anyone else; she could not remember whether it was the TBI agents or Attorney General Cox who made this request. She complied with the instruction and refused to give CPC copies of the requested documents. Ms. Dzik did supply CPC with all of the other documents it requested.

On December 12, 2002, CPC, which is the publisher of the *Chattanooga Times Free Press*, Tom Griscom, executive editor of the newspaper, and Andy Drury, a reporter for the newspaper, filed a petition to obtain public records pursuant to T.C.A. 10-7-503 *et seq.*, the Tennessee Public Records Act. The Trial Court entered an order to show cause why the petition should not be granted. The Election Commission filed an answer in response to the petition, which alleged as follows:

> [T]he Respondents have not disclosed oaths of identity, fail safe affidavits, or changes of voter addresses pertaining to the May 7 election in District 4. In addition, Respondents have not disclosed the ballot forms for District 4, poll worker payroll records for District 4, and a list of poll workers for District 4 with party affiliation. These

---

[1]An oath of identity is a sworn statement made by a voter who arrives at a polling site with no form of identification; the voter swears to his or her identity and is allowed to vote. A fail-safe affidavit is one signed by a voter who has moved but has not registered the change of address with the Election Commission prior to the election. The voter signs a fail-safe affidavit and is then allowed to vote in his or her new home precinct.

items are confidential records within the meaning of Tennessee Code Annotated section 10-7-504(a)(2) as constituting part of the investigative file of the Tennessee Bureau of Investigation, which is presently contemplating whether to initiate an investigation into voting irregularities in District 4.

After a hearing held on December 18, 2002, the Trial Court ruled that the records were "investigative records" of the TBI and thus confidential under T.C.A. 10-7-504(a)(2). Petitioners have appealed this ruling. *Amici curiae* the Tennessee Press Association and *The Tennesseean* have each filed a brief supporting the Petitioners' position and arguing that the Trial Court's interpretation of the Public Records Act was erroneous.

At the outset, we must determine the issue of whether this appeal is moot, as is argued by the Election Commission. On April 7, 2003, the Respondents filed a motion stating that they "have been advised by District Attorney General Bill Cox that the [TBI] has concluded its investigation and that there no longer exists a reason for the records to remain exempt from disclosure under the Tennessee Public Records Act." The Court granted this motion and ordered the records unsealed and released to the Petitioners.

It is well settled that in order to invoke the jurisdiction of the Courts, there must be a genuine and live controversy between the parties which necessitates adjudication of present rights by the Court. *Carson v. DaimlerChrysler Corp.*, an unreported opinion of this Court filed in Jackson on March 19, 2003. In the case of *Dockery v. Dockery*, 559 S.W.2d 952 (Tenn.App.1977), this Court discussed at length the mootness doctrine and the "public interest" exception to the doctrine, stating in relevant part as follows:

> [I]n *New Rivieria Arts Theatre v. State*, 219 Tenn. 652, 412 S.W.2d 890, 893 (1967). . .the Court followed the general exception to the [mootness doctrine]:
>
> > While the rule that this Court will not decide a moot question is applicable when the question for determination affects only rights and claims personal to the parties, an exception is well recognized when interests of a public character and of importance in the administration of justice generally are involved.
>
> Consequently, an appellate court in Tennessee may entertain an appeal for final determination if it involves questions of public interest even though it has become moot so far as the particular action or parties are concerned.
>
> > &#42;        &#42;        &#42;

"It is not easy to state any hard and fast rules by which questions which are of sufficient public interest to justify refusal to dismiss an appeal which has become moot. . .may be distinguished from questions which are not of such interest, since the matter rests generally in the discretion of the appellate court in each particular case." 132 A.L.R. 1188-1189. However, the starting point is to determine the meaning of "public interest." Generally, public interest "means something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals." 132 A.L.R. 1189. The types of issues the courts are likely to resolve despite their mootness are:

(1) questions that are likely to arise frequently;

(2) questions involving the validity or construction of statutes;

(3) questions relating to elections;

(4) questions relating to taxation, revenue, or governmental financial affairs;

(5) questions relating to the conduct of public officers or bodies;

(6) questions involving the governmental regulation of public utilities; and

(7) questions which must necessarily become moot before the appeal can be heard.

See the Annotation at 132 A.L.R. 1185-1190 for cases from different jurisdictions supporting each category.

In this State a mooted issue is within the public interest if "it is one of great public importance, as where it involves a determination of public rights or interests under conditions which may be repeated at any time." *McCanless v. Klein*, *supra* 188 S.W.2d at 747.

*Dockery*, 559 S.W.2d at 954, 955.

In *Webber v. Bolling*, an unreported opinion of this Court filed in Jackson on December 13, 1989, another case involving the Public Records Act, the Court rejected the appellees' mootness

argument where the appellees initially refused to disclose the information sought by the petitioner, but the petitioner was later able to obtain the information through the discovery process. The *Webber* Court addressed the mootness issue as follows:

> [W]e believe that this matter regarding the accessibility of public records is a matter of great public concern and is of importance in the administration of justice. Accordingly, we will consider this issue.

In the case at bar, we believe the accessibility of public election records, and the right of the public to assure itself that the election process is free, fair, and transparent, is likewise of great public concern. The "public interest" exception to the mootness doctrine is applicable in this case, and we will consider the issue.

The following portions of the Tennessee Public Records Act are relevant and controlling in this case:

### *T.C.A. 10-7-503*

> (a) Except as provided in §10-7-504(f), all state, county and municipal records. . .shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law.

### *T.C.A. 10-7-505*

> (a) Any citizen of Tennessee who shall request the right of personal inspection of any state, county or municipal record as provided in §10-7-503, and whose request has been in whole or in part denied by the official and/or designee of the official or through any act or regulation of any official or designee of any official, shall be entitled to petition for access to any such record and to obtain judicial review of the actions taken to deny the access.

>             *            *            *

> (c) The burden of proof for justification of nondisclosure of records sought shall be upon the official and/or designee of the official of those records and the justification for the nondisclosure must be shown by a preponderance of the evidence.

(d) The court, in ruling upon the petition of any party proceeding hereunder, shall render written findings of fact and conclusions of law and shall be empowered to exercise full injunctive remedies and relief to secure the purposes and intentions of this section, and this section shall be broadly construed so as to give the fullest possible public access to public records.

In cases construing this statute, our Supreme Court has consistently and repeatedly emphasized the legislative mandate to "interpret the terms of the Act liberally to enforce the public interest in open access to the records of state, county and municipal governmental entities." *Memphis Publishing Co. v. Cherokee Children & Family Services, Inc.*, 87 S.W.3d 67, 74 (Tenn.2002) (noting that "the Act serves a crucial role in promoting accountability in government through public oversight of governmental activities."); *see also Tennesseean v. Electric Power Bd. of Nashville*, 979 S.W.2d 297 (Tenn.1998); *Memphis Publishing Co. v. City of Memphis*, 871 S.W.2d 681 (Tenn.1994) ("[O]ur courts have been vigilant in upholding this clear legislative mandate, even in the face of serious countervailing considerations."); *Griffin v. City of Knoxville*, 821 S.W.2d 921 (Tenn.1991); *Memphis Publishing Co. v. Holt*, 710 S.W.2d 513 (Tenn.1986).

The Election Commission relies on the exception found at T.C.A. 10-7-504(a)(2), which states that "[a]ll investigative records of the Tennessee bureau of investigation. . .shall be treated as confidential and shall not be open to inspection by members of the public." As previously noted, the Trial Court found that the records at issue came within this exception and ruled against their disclosure.

It is undisputed that the election records in this case are "public records" within the ambit of the Act. It is also undisputed that at the time CPC requested the documents, neither the original documents nor photocopies of them were in the possession of the TBI, nor was there any investigation underway of the May 7 Hamilton County primary. By the time of the petition filed two days after the request, Ms. Dzik had made the TBI aware of her concerns regarding the election. By the time of the hearing some eight days after CPC's request, a TBI investigation was arguably underway. An agent of the TBI who testified at the hearing noted that "no one with the TBI had any role whatsoever in the creation of these documents."

We are of the opinion that because the election records were unquestionably public records from the time of their creation in May of 2002, and because there were no applicable exceptions to the legislative mandate of accessibility at the time CPC made the request for them, they should have been released to CPC. To hold otherwise, and thereby allow a governmental agency to shield otherwise public information from the daylight of public scrutiny *subsequent to* a request under the Act, would, as noted by *amici curiae*, present the potential for abuse of the TBI by such an agency. Such an interpretation would also run counter to both the letter and spirit of the Public Records Act.

CPC argues that the Trial Court should have awarded its attorney's fees, citing T.C.A. 10-7-505(g), which states:

> If the court finds that the governmental entity, or agent thereof, refusing to disclose a record, knew that such record was public and willfully refused to disclose it, such court may, in its discretion, assess all reasonable costs involved in obtaining the record, including reasonable attorneys' fees, against the nondisclosing governmental entity.

In *Arnold v. City of Chattanooga*, 19 S.W.3d 779 (Tenn.App.1999), this Court noted that the "knowing and willful" standard contained in this statute "is synonymous with bad faith." We stated that the Court "will not impute to the [governmental entity] 'a duty to foretell an uncertain judicial future.'" In the present case neither the actions of Ms. Dzik nor the Election Commission rose to the level of bad faith. The Trial Court expressly found as follows in this regard:

> This Court, based on the evidence, does not find anything which would suggest in any way, shape, form or fashion that Ms. Dzik is trying to play fast and loose with the records or that she is trying to use the TBI to cover something up or hide it.

For the foregoing reasons the judgment of the Trial Court holding the requested election records confidential and inaccessible to the public is reversed. The Trial Court's judgment declining to award CPC attorney's fees is affirmed. Costs of appeal are adjudged against the Appellees, Hamilton County Election Commission and Ms. Dzik in her official capacity as Administrator of Elections.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE