# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### AUGUST 3, 2004 Session

## CITY OF COOKEVILLE, TENNESSEE v. TENNESSEE WATER QUALITY CONTROL BOARD, ET AL.

**Direct Appeal from the Chancery Court for Davidson County**
**No. 02-3694-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2003-02476-COA-R3-CV - Filed November 16, 2004**

---

This appeal concerns the rule-making authority of the Tennessee Department of Environment and Conservation under the Tennessee Uniform Administrative Procedures Act. The City of Cookeville, seeking to expand its treatment works facility, obtained a permit from the Tennessee Department of Environment and Conservation which placed nitrogen limits on the City's effluent emissions into Pigeon Roost Creek in Putnam County, Tennessee. The city filed a declaratory judgment action with the Chancery Court of Davidson County asking the court to find as follows: (1) the section 303(d) list created by the Tennessee Department of Environment and Conservation, which listed Pigeon Roost Creek as organically enriched, amounted to an improperly promulgated rule in violation of the Tennessee Uniform Administrative Procedures Act, and (2) the organic enrichment criteria contained in the section 303(d) list amounted to an improperly promulgated Water Quality Standard, which in turn constitutes an improperly promulgated rule, that the Tennessee Department of Environment and Conservation used to impose restrictions on the city's permit. The parties each filed motions for summary judgment with the chancery court. The chancellor granted the city's motion, finding that the section 303(d) list containing the organic enrichment criteria amounted to improperly promulgated rules as a matter of law. The state appealed the chancellor's ruling to this Court and, for the reasons contained herein, we dismiss this case as non-justiciable.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Dismissed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Elizabeth P. McCarter, Senior Counsel, Nashville, TN, for Appellants

William L. Penny, John Knox Walkup, Andrew J. Pulliam, Nashville, TN, for Appellee

## OPINION

### Factual History and Procedural Background

The City of Cookeville, Tennessee, (the "City") operates a publicly owned treatment works facility (the "Facility") which encompasses a sewage treatment plant. The City treats the wastewater coming into the Facility through biological and chemical treatment processes. The City discharges the treated wastewater effluent into the Pigeon Roost Creek located in Putnam County, Tennessee.

The federal Clean Water Act (the "CWA"), codified at 33 U.S.C. § 1251 *et seq.*, requires each state to develop Water Quality Standards for the water bodies within their respective borders. *See* 33 U.S.C. § 1313 (2003). The CWA also requires each state to compile a list identifying those water bodies within the state "for which effluent limitations required [under the applicable Water Quality Standards] are not stringent enough to implement any water quality standard applicable to

such waters."[1] 33 U.S.C. § 1313(d) (2003). The list compiled by each state is referred to as a section 303(d) list.

In 1977, the Tennessee General Assembly promulgated the Tennessee Water Quality Control Act ("Water Quality Act"), codified at section 69-3-101 *et seq*. of the Tennessee Code. Tenn. Code Ann. § 69-3-101 (2003). The Water Quality Act provides for the establishment of the Tennessee Water Quality Control Board (the "Board"). Tenn. Code Ann. § 69-3-104(a)(1) (2003). The Board is composed of ten (10) members, and the Commissioner[2] of the Tennessee Department of

---

[1] One commentator has explained the interaction between the individual states and federal government as follows:

> The water quality standards provisions of section 303 of the Clean Water Act establish one of the basic mechanisms by which the federal government can require that restrictions be placed on the discharge of pollutants into the nation's waters. Under this scheme, states establish water quality standards that specify both the specific uses to be made of each body of water within their borders and the maximum concentrations of pollutants that are allowable in view of such uses. States may tailor limitations on polluters to ensure that water quality standards are not violated.
>
> The states' water quality standards, however, are subject to review by the federal Environmental Protection Agency (EPA) to determine whether the standards meet the minimum requirements of the Clean Water Act. EPA in 1975 first promulgated regulations defining the minimum requirements with which states must comply. In 1982 EPA proposed major revisions to these requirements. . . .
>
> . . . .
>
> A state must submit any revised or new standard to the Administrator of EPA, who determines whether the standard "meets the requirements of this chapter." If the Administrator under this criterion approves the standard, section 303(c)(3) provides that the new or revised standard "shall thereafter be the water quality standard for the applicable waters of that State." If, however, the Administrator determines that the standard does not meet the requirements of the chapter, he must notify the Governor of the state submitting the standard and advise the Governor of the necessary changes. The Administrator may promulgate the necessary changes as federal standards applicable to the water body within the state if the state does not make the required changes. Section 303(c)(4)(B) also authorizes the Administrator to promulgate a federal water quality standard independently of any state submission if the Administrator "determines that a revised or new standard is necessary to meet the requirements of this chapter."

Jeffrey M. Gaba, *Federal Supervision of State Water Quality Standards Under the Clean Water Act*, 36 Vand. L. Rev. 1167, 1168–72 (1983).

[2] "'Commissioner' means the commissioner of environment and conservation or the commissioner's duly authorized representative and, in the event of the commissioner's absence or a vacancy in the office of commissioner, the deputy commissioner." Tenn. Code Ann. § 69-3-103(11) (2003). In addition to serving as chairman of the Board, the Commissioner also has certain statutorily defined duties in carrying out the mandates of the Water Quality Act. Tenn. Code Ann. § 69-3-107 (2003). At the time this litigation commenced in December of 2002, Mr. Milton H. Hamilton, Jr. served as Commissioner of Tennessee Department of Environment and Conservation. In January 2003, the Governor appointed Betsy L. Child to take over as Commissioner of the Tennessee Department of Environment and Conservation.

(continued...)

Environment and Conservation ("TDEC") is to serve as chairman of the Board. Tenn. Code Ann. § 69-3-104(a)(1)(A) (2003). The Water Quality Act provides that "[t]he board has and shall exercise the power, duty, and responsibility to establish and adopt standards of quality for all waters of the state." Tenn. Code Ann. § 69-3-105(a)(1) (2003). In carrying out this mandate, the Board classifies all the water bodies within the state and sets water quality standards based on those classifications.[3] Tenn. Code Ann. § 69-3-105(a)(2)–(4) (2003).

In September of 1998, TDEC published its final draft of the 1998 303(d) list. Pigeon Roost Creek was included on the list as an impaired water body due to "Organic enrichment/DO." Also in 1998, the City sought to expand the Facility. The Water Quality Act requires that anyone planning to expand a treatment works facility which discharges into a water body within the State of Tennessee must apply for a permit.[4] Tenn. Code Ann. § 69-3-108(b)(2), (c) (2003). The City, in an effort to comply with the Water Quality Act, filed a request for a new National Pollutant Discharge Elimination System ("NPDES") Permit ("Draft Permit") with TDEC. TDEC issued the City a Draft Permit, but the Draft Permit required the City to monitor the nitrogen levels of its emissions due to the organically enriched waters in Pigeon Roost Creek.[5] At the time that the City

---

[2](...continued)
Official Website of the Tennessee Department of Environment and Conservation, *available at* http://www.state.tn.us/environment/bio.php (last visited October 8, 2004). Commissioner Child replaced Mr. Hamilton in this litigation following the change.

[3] The Water Quality Act provides:
> The board has and shall exercise the power, duty, and responsibility to adopt, modify, repeal, promulgate after due notice and enforce rules and regulations that the board deems necessary for the proper administration of this part, the prevention, control, and abatement of pollution, or the modification of classifications and the upgrading of the standards of quality in accordance with subsection (a).

Tenn. Code Ann. § 69-3-105(b) (2003).

[4] The Water Quality Act provides:
> The board has and shall exercise the power, duty, and responsibility to adopt, modify, repeal, and promulgate all necessary rules and regulations for the purpose of establishing and administering a comprehensive permit program that will enable the department of environment and conservation to be designated by the United States environmental protection agency as authorized to issue permits under the national pollutant discharge elimination system established by § 402 of the Federal Water Pollution Control Act, P.L. 92-500.

Tenn. Code Ann. 69-3-105(h)(1) (2003).

[5] The Water Quality Act directs the Commissioner of TDEC to issue permits according to the following:
> The commissioner may grant permits authorizing the discharges or activities described in subsection (b) including, but not limited to, land application of wastewater, but in granting such permits shall impose such conditions, including effluent standards and conditions and terms of periodic review, as are necessary to accomplish the purposes of this part, and as are not inconsistent with the regulations promulgated by the board thereunder. Under no circumstances shall the

(continued...)

-4-

was issued the 1998 Draft Permit, the Board had not promulgated any Water Quality Standards regarding organic enrichment. The Draft Permit was reviewed by the federal Environmental Protection Agency ("EPA") pursuant to the EPA/Tennessee Memorandum Agreement. The EPA issued a letter on December 16, 1999, stating that it had reviewed the Draft Permit issued to the City and concluded that "[b]ased on 40 C.F.R. Section 122.44(d), since nitrogen may cause or contribute to a water quality excursion at the increased loading, this parameter should be limited in the permit." (Exhibit 7 to Plaintiff's Motion for Summary Judgment). On July 12, 2000, TDEC issued another NPDES Permit ("Modified Permit") to the City which contained a numeric discharge limit for nitrogen.[6]

On August 7, 2000, the City filed an administrative appeal with the Board contesting the terms and conditions in the Permit, specifically the nitrogen limits and placement of Pigeon Roost Creek on the section 303(d) list.[7] The City also filed a Petition for Declaratory Order with the Board, pursuant to section 4-5-223 of the Tennessee Code,[8] seeking a ruling that the section 303(d) list must be promulgated as a "rule" pursuant to the Tennessee Uniform Administrative Procedures Act ("UAPA"), codified at section 4-5-101 *et seq.* of the Tennessee Code. The City alleged that TDEC, by promulgating and implementing the section 303(d) list containing organic enrichment criteria for Pigeon Roost Creek, usurped the authority expressly delegated to the Board by the legislature. On November 4, 2002, the Board declined to issue a declaratory order.

---

[5](...continued)
> commissioner issue a permit for an activity which would cause a condition of
> pollution either by itself or in combination with others.

Tenn. Code Ann. § 69-3-108(e) (2003).

[6] Under the Water Quality Act, the Commissioner has the power to modify a permit for cause. Tenn. Code Ann. § 69-3-108(f) (2003). The letter notifying the City of the Modified Permit provided as follows:
> In accordance with the provisions of the Tennessee Water Quality Control Act . . . the enclosed NPDES Permit is hereby modified by the Division of Water Pollution Control. The continuance and/or reissuance of this NPDES Permit is contingent upon your meeting the conditions and requirements as stated therein. The modification was necessary to correct an error in the permit that was issued on June 30, 2000.
> Since this modification occurred within thirty days of the previous reissuance of this permit, you have the right to appeal any of the provisions established in the NPDES Permit, in accordance with Tennessee Code Annotated, Section 69-3-110 and the General Regulations of the Tennessee Water Quality Control Board.

The Modified Permit was set to expire on June 30, 2002.

[7] At the time the State filed the instant appeal to this Court, the appeal before the Board was still pending.

[8] "Any affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency." Tenn. Code Ann. § 4-5-223(a) (2003). The agency may either convene a contested case hearing and issue a declaratory order, or it may refuse to issue a declaratory order. Tenn. Code Ann. § 4-5-223(a)(1)–(2) (2003). If the agency declines to issue a declaratory order, the person may apply for a declaratory judgment pursuant to section 4-5-225. Tenn. Code Ann. § 4-5-223(a)(2) (2003).

On December 10, 2002, the City filed a complaint against the Board and the Commissioner of TDEC (collectively the "State") in the Chancery Court of Davidson County, asking the court for declaratory relief pursuant to section 4-5-225 of the Tennessee Code.[9] The City sought a declaratory judgment as to the following: (1) the 1998 section 303(d) list used by TDEC in making permit decisions falls within the definition of a "rule" under section 4-5-102(10) of the Tennessee Code, therefore, the Board must promulgate the list under the UAPA, and (2) that the criteria for organic enrichment developed by TDEC and utilized in its permitting decisions amounts to a water quality criteria, which also qualifies as a "rule" under section 4-5-102(10) of the Tennessee Code and must be promulgated by the Board under the UAPA.

The City filed a Motion for Summary Judgment with the chancery court on April 15, 2003, asking the court to find that the 1998 section 303(d) list and organic enrichment requirements were void as a matter of law. On May 16, 2003, the State filed a Motion to Dismiss the City's complaint, alleging that the court lacked subject matter jurisdiction because the issues were pending resolution in an administrative proceeding below. On June 2, 2003, the State filed a response to the City's Motion for Summary Judgment which also contained the State's Cross-Motion for Summary Judgment. On June 6, 2003, the chancellor issued an Order denying the State's Motion to Dismiss, finding that the City satisfied the requirements of section 4-5-225 of the Tennessee Code. The chancellor conducted a hearing on the summary judgment motions on July 11, 2003, and she issued her ruling on July 16, 2003, granting summary judgment to the City. The chancellor ruled that TDEC used the 1998 section 303(d) list of impaired water streams and the organic enrichment criteria as a "rule" under section 4-5-102(10) of the Tennessee Code in violation of the UAPA.

The State filed a Notice of Appeal to this Court appealing only that portion of the Chancellor's order pertaining to the validity of the section 303(d) list of impaired streams. The State asks us to entertain the following issues:

---

[9] Section 4-5-225 provides:

> (a) The legal validity or applicability of a statute, rule or order of an agency to specified circumstances may be determined in a suit for a declaratory judgment in the chancery court of Davidson County, unless otherwise specifically provided by statute, if the court finds that the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights of the complainant. The agency shall be made a party to the suit.
> (b) A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order.
> (c) In passing on the legal validity of a rule or order, the court shall declare the rule or order invalid only if it finds that it violates constitutional provisions, exceeds the statutory authority of the agency, was adopted without compliance with the rulemaking procedures provided for in this chapter or otherwise violates state or federal law.

Tenn. Code Ann. § 4-5-225(a)–(c) (2003).

I. Whether the trial court erred in finding that TDEC was using the section 303(d) list of impaired streams as a "rule" in violation of the UAPA; and

II. Whether the trial court erred in finding that TDEC used the section 303(d) list as a water quality standard to impose NPDES permit requirements on dischargers such as the City of Cookeville?

For the reasons set forth below, we decline to entertain the issues presented by the State because this case has become moot. In addition, to address the issues raised by the State would amount to this Court issuing an advisory opinion, which we decline to do.

### Dismissal of Appeal on Non-Justiciability Grounds

On appeal, the State's brief directs our attention to the fact that the Board subsequently promulgated an emergency rule regarding nutrient criterion for Tennessee's water bodies as a result of the chancellor's ruling.[10] The new regulation was adopted into the Board's Water Quality Standards in September of 2003 and codified at Tenn. Comp. R. & Reg. 1200-4-3-.03(3)(i).[11] We have determined that the promulgation of this new Water Quality Standard governing the organic enrichment of Tennessee's waters has a direct bearing on whether this case is justiciable, therefore we will consider this additional fact on appeal.[12]

---

[10] The Board enacted the emergency rule on July 22, 2003, to address the chancery court's ruling that organic enrichment resulting from excessive nutrients cannot be addressed in NPDES permits issued by TDEC absent a water quality standard rule adopted by the Board under the UAPA. (Appellant's Br. at 3; Exhibit 1). The State's brief stated that "[a]lthough the State appellants disagree with the Chancery Court's ruling with respect to organic enrichment, the issue has not been appealed in anticipation of a mootness defense being raised by virtue of the Board's formal adoption of the nutrient criterion."

[11] The City took issue with the inclusion of this new information on appeal and filed a Motion to Consider Post-Judgment Facts Under Tenn. R. App. P. 14 with this Court on July 21, 2004. The City asked this Court to consider the ruling by the Administrative Law Judge ("ALJ") issued on March 9, 2004, after the present appeal was filed in this Court. The ALJ granted the City's motion for partial summary judgment stating that "the reason for the nitrogen limit in the City's permit was Pigeon Roost Creek's inclusion on the 303(d) list." (Order Granting Petitioner's Motion for Partial Summary Judgment). The ALJ went on to find the following:

> That argument, as to whether the State can retroactively apply Emergency or Permanent Rules to pending applications, need not be decided, here.
>
> . . . .
>
> [T]he nitrogen limits set forth in the NPDES permit/ "application" issued to the City is void and of no effect.

The State filed a response arguing that it brought the new rule to this Court's attention to explain why the State did not appeal the chancery court's ruling on the organic enrichment issue. Accordingly, the City argues that the chancellor's ruling on that issue stands, and, therefore, the previous organic enrichment criteria applied to the City in the Permit is no longer in effect and cannot be applied retroactively. The ALJ's opinion also references the fact that the City has a renewal permit application still pending before the Board.

[12] Rule 14 provides as follows:

> (a) Power to Consider Post-Judgment Facts. The Supreme Court, Court of Appeals,

(continued...)

In granting the City's motion for summary judgment, the chancellor's order contained the following statement:

> [T]he Court finds and concludes that the undisputed facts presented to the Court show that the Defendants are using both the State's 1998 303(d) list of impaired water streams ("303(d) list") *and organic enrichment criteria set forth in the 303(d) list* as a Rule as that term is defined in Tennessee Code Annotated 4-5-102(10).

The State filed a Notice of Appeal to this Court stating that it was appealing "only that portion of the Order addressing the State's 303(d) list of impaired streams."[13]

This Court must be utilized in a manner that ensures our decisions will have a direct bearing on the parties before the Court, and we have stated as much:

> In general terms, the justiciability doctrine requires that cases must involve presently existing rights, live issues that are within a court's power to resolve, and parties who have a legally cognizable interest in the judicial resolution of the issues. Thus, courts will decline to provide judicial relief in cases that do not involve genuine existing controversies requiring the adjudication of present rights. *State ex rel. Lewis v. State*, 208 Tenn. 534, 347 S.W.2d 47, 48 (1961); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App. 1998), and will likewise decline to render declaratory judgments to decide theoretical questions or render advisory opinions. *State v.*

---

[12](...continued)

> and Court of Criminal Appeals *on its motion* or on motion of a party may consider facts concerning the action that occurred after judgment. Consideration of such facts lies in the discretion of the appellate court. *While neither controlling nor fully measuring the court's discretion, consideration generally will extend only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness*, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters. Nothing in this rule shall be construed as a substitute for or limitation on relief from the judgment available under the Tennessee Rules of Civil Procedure or the Post-Conviction Procedure Act.

Tenn. R. App. P. 14(a) (2003)(emphasis added). We denied the City's motion to supplement the record with the ALJ's opinion because the ruling of the ALJ is merely a legal conclusion, and it does not constitute a post-judgment "fact."

[13] Tennessee Rule of Appellate Procedure 13(b) provides that '[r]eview generally will extend to only those issues presented for review." Tenn. R. App. P. 13(b) (2003). The Advisory Commission Comment to Rule 13(b) provides that "this subdivision provides that review will typically extend only to those issues set forth in the briefs." Tenn. R. App. P. 13(b) cmt. (2003). Accordingly, we consider only that portion of the chancellor's ruling presented for review by the State.

> *Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 193 (Tenn.
> 2000).

*Charter Lakeside Behavioral Health Sys. v. Tenn. Health Facilities Comm'n*, No. M1998-00985-COA-R3-CV, 2001 Tenn. App. LEXIS 58, at *14 (Tenn. Ct. App. Jan. 30, 2001). "It is, of course, well settled that when the issues sought to be presented by an appeal have been rendered moot pending the appeal the appeal will be dismissed." *State v. Thomas*, 585 S.W.2d 606, 607 (Tenn. 1979) (citations omitted); *see also Dockery v. Dockery*, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977).

"A moot case is one that has lost its character as a present, live controversy." *McIntyre v. Traughber*, 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994) (citing *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945)). "Cases must be justiciable not only when they are first filed but must also remain justiciable throughout the entire course of the litigation, including the appeal." *Id.* "A case will generally be considered moot if it no longer serves as a means to provide relief to the prevailing party." *Id.* (citations omitted).

Based on our review of the record, the chancery court's holding that the 1998 section 303(d) list amounted to an improperly promulgated rule is inextricably intertwined with the fact that the list cited the Pigeon Roost Creek as "organically enriched." The City's complaint for declaratory relief hinged on the fact that the 1998 section 303(d) list stated that Pigeon Roost Creek was "organically enriched." The State concedes that at the time the limits were placed in the City's Modified Permit the Board had not promulgated any regulations addressing organic enrichment of water bodies within this state. The State argues, however, that the section 303(d) list is not a rule but only an interpretation of already promulgated Water Quality Standards.[14]

The City argues that this case is not moot because there is the potential that a new section 303(d) list may be used to impose another limit on future permits the City may seek. We note that we can only address the facts as they existed at the time this case was tried below. We agree with the City in that the State's failure to appeal the chancery court's ruling regarding the organic enrichment limitations placed in the Modified Permit effectively prevents the State from

---

[14] In arguing that the section 303(d) list is not a "rule" under the UAPA, the State's brief contained the following argument:

> But a discharger such as Cookeville is not required to comply with the 303(d) list and, by corollary, it cannot be in violation of the list. Instead, a discharger must comply with the water quality standards promulgated by the Board, and those standards are the predicate for establishing conditions in NPDES permits such as the one issued to Cookeville.
>
> . . . .
>
> In sum, the 303(d) list of impaired streams is an interpretive tool used by TDEC to implement the Board's promulgated water quality standards.

During oral argument, the State asserted that the list itself is not the cause of the limits placed in the City's Modified Permit, but is in fact the Water Quality Standards themselves - Water Quality Standards, which we note, did not exist at the time the limitations were placed in the City's Modified Permit.

retroactively applying the criteria from the 1998 section 303(d) list.[15]  The City itself stated during oral argument that the nitrogen limits placed in the Modified Permit have been removed.  In addition, the Modified Permit issued by the State that is at issue in this case expired on June 30, 2002.  The state's decision not to appeal the organic enrichment criteria as they existed at the time the City filed its complaint demonstrates that the State intends to apply the newly promulgated organic enrichment Water Quality Standard to all permit applications submitted after the standard was adopted. Therefore, in light of events occurring after this appeal was filed, the question of whether the 1998 section 303(d) list was an improperly promulgated "rule" has become moot.  A decision by this Court holding that the 1998 section 303(d) list used in issuing the prior permit to the City did or did not constitute a "rule" under the UAPA would have no effect on the permit at issue, which no longer contains nitrogen limitations and has already expired.  In essence, we are left with the issue of whether a *future* section 303(d) list would constitute a "rule" which must be promulgated by the Board, and not TDEC, in order to be in compliance with the UAPA.  Addressing that issue would amount to this Court issuing an advisory opinion, which we decline to do.

## Conclusion

For the foregoing reasons, this case stands dismissed.  Costs of this appeal are taxed against the Appellants, the Tennessee Water Quality Control Board and Betsy L. Child, in her capacity as Commissioner of the Tennessee Department of Environment and Conservation, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[15] We are not asked to, nor could we, address whether the City may impose limitations on a future permit issued to the City using Water Quality Standards that were promulgated by the Board after this case was tried.  On appeal, we are only asked to consider whether the 1998 section 303(d) list, which contained organic enrichment criteria, was an improperly promulgated rule under the UAPA.