# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

AMANDA LINN CASHION,   )
  )
   Plaintiff/Appellant,   )
  )
  )
VS.   )
  )
  )
EVELYN C. ROBERTSON, JR., in   )
his capacity as Commissioner,   )
Tennessee Dept. of Mental Health   )
and Mental Retardation, and   )
DON G. HOLT, in his capacity as   )
Commissioner, Tennessee Dept. of   )
Personnel,   )
  )
   Defendants/Appellees.   )

FILED

March 19, 1997

Cecil W. Crowson
Appellate Court Clerk

Davidson Chancery
No. 94-3739-II

Appeal No.
01A01-9506-CH-00257

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE C. ALLEN HIGH, CHANCELLOR

For the Plaintiff/Appellant:

Amanda Linn Cashion, Pro Se
Memphis, Tennessee

For the Defendants/Appellees:

John Knox Walkup
Attorney General and Reporter

Sherry E. Martin
Assistant Attorney General

## AFFIRMED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal involves the Department of Mental Health and Mental Retardation's dismissal of a probationary staff attorney because she was "not fitting in." After unsuccessfully seeking a declaratory order from her former department, the Civil Service Commission, and the Department of Personnel, the staff attorney filed an action in the Chancery Court for Davidson County challenging her termination and seeking back pay, expungement of her employment records, and attorney's fees. The trial court granted the motion to dismiss, and the staff attorney has perfected this appeal. While the trial court properly held that it lacked subject matter jurisdiction over the claims for monetary relief, it erred by holding that it lacked subject matter jurisdiction over the claim for declaratory relief. We have determined, however, that the complaint fails to state a claim for a declaratory relief under Tenn. Code Ann. § 4-5-224 (1991).

## I.

Amanda Linn Cashion began working for the Department of Mental Health and Mental Retardation ("DMHMR") on July 25, 1994. She was classified as an "Attorney III" and was assigned to the Arlington Developmental Center in Shelby County. The Arlington Developmental Center was at that time the subject of federal litigation commenced by the United States Department of Justice concerning DMHMR's failure to provide its residents with a safe environment.

On her second day at work, Joseph Boyd, the Department's chief counsel, invited Ms. Cashion to accompany him to a conference at the University of Tennessee Medical School in Memphis. While traveling to the conference site, Mr. Boyd explained the pending federal lawsuit to Ms. Cashion and, according to her, made numerous derogatory remarks about her immediate supervisor at Arlington and about an assistant state attorney general representing the DMHMR in the federal litigation. Ms. Cashion promptly shared Mr. Boyd's remarks with her immediate supervisor.

Several days later, Ms. Cashion and the other DMHMR staff attorneys met in Nashville to discuss the Department's response to the expected federal investigations of the Department's other developmental centers. During this meeting, Ms. Cashion was extremely critical of the DMHMR's handling of the federal investigation and of its standards and procedures at Arlington. She returned to Memphis following the meeting but did not report for work at Arlington for several days. She decided to work at home because the Department had not provided her with "proper office space" at Arlington and because she believed that her work was on hold while the DMHMR decided how to respond to several matters in the pending federal litigation.

Ms. Cashion met with Stanley Lipford, Arlington's interim superintendent, and Larry Durbin, one of the DMHMR's assistant commissioners, when she returned to Arlington on August 22, 1994. Dr. Durbin informed her that the Commissioner of the DMHMR had decided to terminate her because her comments at the meeting in Nashville indicated that she was not "fitting in." When Ms. Cashion vehemently protested her dismissal, Dr. Durbin and Mr. Lipford instructed her to clear out her desk, return her keys, and leave the Arlington premises by the end of the day.

Ms. Cashion received a certified letter from Mr. Lipford on August 27, 1994, stating that she had been placed on "administrative leave" on August 22, 1994 and that her termination from the DMHMR was effective as of August 25, 1994. The letter did not recite the reasons for her termination but rather simply referred to her discussion with Dr. Durbin. Ms. Cashion later received a separation notice submitted by the DMHMR to the Department of Employment Security stating that she had been employed "from 7/25/94 to 8/26/94." She also received a copy of a letter from the DMHMR to the Commissioner of Personnel stating that she had been terminated on August 25, 1994, because her "conduct in meetings and in other personal contact with DMHMR personnel was such as to lead us to conclude that she would not become an effective member of DMHMR's management and service team." The letter added that the "quality of the performance of her professional duties played no part in this decision."

On September 2, 1994, Ms. Cashion submitted a petition for a declaratory order under Tenn. Code Ann. § 4-5-223 (1991) to the DMHMR and the Civil Service Commission seeking a declaration of her rights as a probationary employee under Tenn. Code Ann. § 8-30-312 (1993). The Commmissioner of Personnel, acting as the secretary to the Civil Service Commission, responded that the Commission did not have authority to hear Ms. Cashion's "appeal" because she was still a probationary employee who had not gained career status. The DMHMR also declined to make a declaratory ruling on the ground that the petition was within the jurisdiction of the Commissioner of Personnel.

Faced with these refusals to respond to her petitions, Ms. Cashion filed a petition in the Chancery Court for Davidson County seeking a declaratory judgment pursuant to Tenn. Code Ann. § 4-5-224 concerning her rights as a probationary employee. She also sought back pay, expungement of all entries in her employment records concerning the termination, and attorney's fees and court costs. The Commissioners of Personnel and the DMHMR filed a motion to dismiss the complaint asserting that the trial court lacked subject matter jurisdiction, that the doctrine of sovereign immunity barred Ms. Cashion's claims for monetary relief, and that the complaint failed to state a claim upon which relief could be granted. On February 16, 1995, the trial court entered an order dismissing Ms. Cashion's complaint. Ms. Cashion has perfected this appeal.

## II.
### MOOTNESS

The defendant commissioners assert as a preliminary matter that Ms. Cashion's claims are moot because she has already been terminated. They argue that Tenn. Code Ann. § 4-5-224 contemplates a continuing statutory violation on which judicial declaration might have some effect. While we agree with this statement in principle, we do not find that Ms. Cashion's claims are moot under the facts of this case.

The courts should decline to provide judicial relief in cases that do not involve a genuine and existing controversy requiring the adjudication of present

rights. *State ex rel. Lewis v. State,* 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Dockery v. Dockery,* 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977). Cases must remain justiciable throughout the entire course of the litigation, and the concept of mootness involves circumstances that render a case no longer justiciable. *McIntyre v. Traughber,* 884 S.W.2d 134, 137 (Tenn. Ct. App. 1994). A moot case is one that has lost its character as a present, live controversy. *McCanless v. Klein,* 182 Tenn. 631, 637, 188 S.W.2d 745, 747 (1945). A case will generally be considered to be moot if it no longer serves as a means to provide some sort of relief to the prevailing party. *McIntyre v. Traughber,* 884 S.W.2d at 137; *Massengill v. Massengill,* 36 Tenn. Ap. 385, 388-89, 255 S.W.2d 1018, 1019 (1952).

Even though Ms. Cashion has already been terminated, we do not find that she is seeking relief that would be beyond the courts' power to grant in an appropriate case. Even if she is unsuccessful in convincing the courts to set aside her termination or to grant her monetary relief, she may be entitled to judicial relief with regard to the other rights she might have under Tenn. Code Ann. § 8-30-312. Accordingly, we decline to find that this appeal is moot.

## III.
### THE CLAIMS FOR MONETARY RELIEF

We need not tarry long with Ms. Cashion's claims for monetary relief. Because of the sovereign immunity conferred on the State by Tenn. Const. art. I, § 17 and Tenn. Code Ann. § 20-13-102(a) (1994), Ms. Cashion can seek monetary relief in the courts only if the General Assembly has enacted a statute specifically permitting claims for monetary relief for wrongful discharge from state employment. Ms. Cashion has not cited and our research has failed to uncover a statute permitting discharged state employees to file suit against the state for monetary damages.[1] Accordingly, we find that the trial court correctly determined

---

[1]The Civil Service Commission is the only body vested with the authority to grant monetary relief to wrongfully terminated state employees. *See* Tenn. Code Ann. § 8-30-328(e), (f) (1993) (authorizing the Commission to award back pay and benefits and attorney's fees). However, only "regular employees" are entitled to this relief. A "regular employee" is one who
(continued...)

that it lacked subject matter jurisdiction over Ms. Cashion's claims for monetary relief. *See Stokes v. University of Tennessee,* 737 S.W.2d 545, 546 (Tenn. Ct. App. 1987) (holding that Tenn. Const. art. I, § 17 bars a discharged state university employee's suit for reinstatement and back pay).

## IV.
### THE DECLARATORY JUDGMENT CLAIM

Based on the language of the trial court's final order, we must presume that the trial court determined that it lacked subject matter jurisdiction over Ms. Cashion's claim for a declaratory judgment and that Ms. Cashion's petition failed to state a claim under Tenn. Code Ann. § 4-5-224. We find that the trial court erred with regard to its subject matter jurisdiction but that Ms. Cashion's complaint fails to state a claim upon which relief can be granted.

### A.
#### THE TRIAL COURT'S SUBJECT MATTER JURISDICTION

The concept of subject matter jurisdiction relates to a court's lawful authority to adjudicate a controversy brought before it. *Turpin v. Conner Bros. Excavating Co.,* 761 S.W.2d 296, 297 (Tenn. 1988); *Standard Sur. & Casualty Co. v. Sloan,* 180 Tenn. 220, 230, 173 S.W.2d 436, 440 (1943). It hinges upon the nature of the cause of action and the relief sought. *Landers v. Jones,* 872 S.W.2d 674, 675 (Tenn. 1994). Subject matter jurisdiction can only be conferred on a court by the Constitution of Tennessee or by legislative act. *Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn. 1977); *Brown v. Brown,* 198 Tenn. 600, 618-19, 281 S.W.2d 492, 501 (1955).

Tenn. Code Ann. § 4-5-224(a) empowers the Chancery Court of Davidson County to hear and decide declaratory judgment actions concerning the "legal validity or applicability of a statute, rule or order of an agency to specified

---

[1](...continued)
holds a regular civil service position and who has completed his or her initial probationary period. Tenn. Code Ann. § 8-30-101(a)(20) (Supp. 1996); Tenn. Code Ann. § 8-30-328(a)(2).

-6-

circumstances." The only statutory prerequisites for bringing a declaratory judgment action under Tenn. Code Ann. § 4-5-224 are that the complainant must first have requested the agency for a declaratory order pursuant to Tenn. Code Ann. § 4-5-223 (1991) and that the agency must have declined to issue a declaratory order. Tenn. Code Ann. § 4-5-224(b).

The trial court unquestionably had subject matter jurisdiction over declaratory judgment actions brought in accordance with Tenn. Code Ann. § 4-5-224. The only question remaining is whether Ms. Cashion demonstrated that she satisfied the statutory requirements for bringing such an action. Her petition demonstrates that she first requested the DMHMR, the Civil Service Commission, and the Department of Personnel to render a declaratory order concerning her rights under Tenn. Code Ann. § 8-30-312 and that all three agencies declined to render a declaratory order. Accordingly, the trial court erred when it concluded that it lacked subject matter jurisdiction to consider Ms. Cashion's claim for declaratory relief.

## B.
### THE ADEQUACY OF MS. CASHION'S CLAIM

Finding that the trial court had suject matter jurisdiction to hear Ms. Cashion's claim does not necessarily entitle her to relief. Her complaint could still fail to state a claim upon which relief can be granted. Accordingly, we must examine her petition to determine whether it alleges any state of facts that would entitle Ms. Cashion to relief. *Pemberton v. American Distilled Spirits Co.,* 664 S.W.2d 690, 691 (Tenn. 1984); *Rampy v. ICI Acrylics, Inc.,* 898 S.W.2d 196, 198 (Tenn. Ct. App. 1994). In doing so, we must take all well-pleaded allegations in her petition as true, and we must also construe the petition liberally in Ms. Cashion's favor. *Cook v. Spinnaker's of Rivergate, Inc.,* 878 S.W.2d 934, 938 (Tenn. 1994); *Dobbs v. Guenther,* 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992).

Tenn. Code Ann. § 4-5-224 provides that the courts may grant declaratory relief when "the statute, rule or order, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of

the complainant." Thus, our inquiry must focus on whether the manner in which the DMHMR, the Civil Service Commission, or the Department of Personnel interpreted and applied Tenn. Code Ann. § 8-30-312 interfered with or impaired any of Ms. Cashion's legal rights or privileges.

Probationary employees in civil service positions enjoy far fewer rights and privileges than their counterparts who have successfully completed their probationary period. They are, however, not without three minimal rights under Tenn. Code Ann. § 8-30-312. First, Tenn. Code Ann. § 8-30-312(a) permits a probationary employee to work for at least one month before being terminated unless the appointment was the "result of fraud or error." Tenn. Code Ann. § 8-30-312(b). The period provides employees with time to adjust to the position and to demonstrate their ability to perform the required work. *See* Tenn. Comp. R. & Regs. r. 1120-2-.11(1) (1988) (defining the purposes of the probationary period). Second, Tenn. Code Ann. § 8-30-312(a) specifies that probationary employees may be terminated either because they are unable or unwilling to perform their duties satisfactorily or because their habits and dependability do not merit their continued employment. Third, Tenn. Code Ann. § 8-30-212(a) requires that the employee be informed of the termination and the reasons therefor.

### PREMATURE TERMINATION

Ms. Cashion asserts that the DMHMR violated Tenn. Code Ann. § 8-30-312(a) by deciding to terminate her and by informing her of its decision during the first month of her employment. She interprets Tenn. Code Ann. § 8-30-312(a) to require an appointing authority to put off even considering whether a probationary employee should be retained for at least one month after employment. We do not construe Tenn. Code Ann. § 8-30-312(a) so rigidly. Public employers, like their counterparts in the private sector, must be able to continuously monitor an evaluate the performance of their employees. An employee's conduct during the first month of his or her probationary period may provide an appointing authority with sufficient grounds for termination, and when that circumstance arises, all that Tenn. Code Ann. § 8-30-312(a) requires is that the termination take effect one month after the employee's initial hiring date.

Ms. Cashion's superiors notified her of her termination before she had been employed for the DMHMR for one month, but her termination took effect on her one-month anniversary date. Even though Ms. Cashion was placed on administrative leave on August 22, 1994, she was paid for a full month of work. Accordingly, the timing of Ms. Cashion's termination did not violate Tenn. Code Ann. § 8-30-312(a).

### THE STATEMENT OF THE REASONS FOR TERMINATION

Ms. Cashion also asserts that the DMHMR violated Tenn. Code Ann. § 8-30-312(a) by failing to provide her with an adequate statement of the reasons for her termination. While she focuses on on Mr. Lipford's August 25, 1994 letter, she overlooks the Commissioner of the DMHMR's September 20, 1994 letter to the Commissioner of Personnel.

Tenn. Code Ann. § 8-30-212(a) requires an appointing authority to "report to the commissioner [of personnel] and to the employee removed such action and the reasons therefor." While the better practice is to include the statement of reasons for the termination in the employee's termination letter, an appointing authority technically complies with Tenn. Code Ann. § 8-30-312(a) by stating its reasons in the notice it sends to the Commissioner of Personnel and the employee. Mr. Lipford's August 25, 1994 letter does not provide adequate notice of the reasons for terminating Ms. Cashion because it refers only to her "discussion with Dr. Larry Durbin." However, the September 20, 1994 letter to the Commissioner of Personnel contains a statement of the reasons for Ms. Cashion's termination. Tenn. Code Ann. § 4-5-224 only empowers the courts to determine whether the appointing authority informed a probationary employee of its reasons for terminating the employee; it does not empower the courts to second-guess the appointing authority's decision. Since the September 20, 1994 letter contains a statement of the DMHMR's reasons for terminating Ms. Cashion, it complies with Tenn. Code Ann. § 8-30-312(a).

### V.

We affirm the judgment and remand the case to the trial court for whatever further proceedings may be required. We also tax the costs of this appeal to Amanda Linn Cashion and her surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
BEN H. CANTRELL, JUDGE