# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 16, 2005 Session

## CONSUMER ADVOCATE DIVISION OF THE OFFICE OF THE ATTORNEY GENERAL v. TENNESSEE REGULATORY AUTHORITY

**A Direct Appeal from the Tennessee Regulatory Authority**
**Nos. 03-00512, 03-00554, 03-00624**

---

**Nos. M2004-01481-COA-R12-CV - Filed February 1, 2006**
**M2004-01482-COA-R12-CV - Filed February 1, 2006**
**M2004-01485-COA-R12-CV - Filed February 1, 2006**

---

This is a consolidation of three appeals involving three tariffs filed by BellSouth Telecommunications, Inc. with the Tennessee Regulatory Authority. All three tariffs contained bundled offerings of telecommunications services and non-telecommunications services. The Consumer Advocate Division of the Office of the Attorney General was allowed to intervene in these proceedings in order to address the question of BellSouth's obligation, under the Federal Telecommunications Act of 1996, to offer for resale the telecommunications services contained in the bundled offerings. The Tennessee Regulatory Authority entered orders allowing the tariffs to go into effect without the telecommunications service portions thereof being offered for resale. The Consumer Advocate appealed and the cases were consolidated for that purpose. In 2005, during the pendency of this appeal, the Tennessee General Assembly enacted T.C.A.§65-37-103 (Supp. 2005). This statute specifically exempts retail offerings of combinations or bundles of products or services from the jurisdiction of the Tennessee Regulatory Authority. In addition, all three of the tariffs at issue in this case expired, by their own terms, during the pendency of this appeal, rendering the appeal moot. Because we do not find that these appeals fall within any of the exceptions to the mootness doctrine, we dismiss the appeal as moot.

**Tenn. R. Civ. P. 12, Petition for Review; Appeal of the Tennessee Regulatory Authority Dismissed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

Paul G. Summers, Attorney General and Reporter; Vance L. Broemel, Assistant Attorney General; Joe Shirley, Assistant Attorney General for Petitioner, Consumer Advocate and Protection Division

J. Richard Collier, General Counsel; Carolyn E. Reed, Counsel; Randal L. Gilliam, Counsel; Monica Smith-Ashford, Counsel of Nashville for Respondent-Appellee, Tennessee Regulatory Authority

R. Dale Grimes and Kristin J. Hazelwood of Nashville; Guy M. Hicks and Joelle Phillips of Nashville for Respondent-Appellee, BellSouth Telecommunications, Inc.

**OPINION**

During the Fall and Winter of 2003, the Tennessee Regulatory Authority (the "TRA") opened four dockets to address an incumbent telephone company's[1] legal obligation to make its retail telecommunications services available for resale[2] to customers of competing companies when such telecommunications services and other non-telecommunications services are bundled into a single discounted offering.[3]  The four dockets are as follows:

**Sprint's Safe and Sound Tariff**

TRA Docket No. 03-00442, *In re: Sprint United Tariff 2003-710 to Introduce Safe and Sound Solution*, was opened to address the validity of a tariff filed by Sprint-United ("Sprint") on June 30, 2003 (the "Safe and Sound Tariff").  Although the Safe and Sound Tariff is not the subject of the instant appeal, the procedural history of that tariff bears upon the issue presented for review in the case at bar.  Specifically, in the context of the Combined Bill Reward proceedings (*see infra*), BellSouth Telecommunications, Inc. ("BellSouth" and, together with the TRA, "Appellees") conceded that the Safe and Sound docket would be the forum in which to resolve the issue of the extent to which federal resale requirements under §251(c) of the Federal Telecommunications Act of 1996 (the "Act") apply to telecommunications services that are bundled with non-telecommunications services. Consequently, we will address the history of the Safe and Sound

---

[1] "Incumbent telephone companies" are generally the former monopoly service providers that existed when the Federal Telecommunications Act of 1996 was enacted, as opposed to those companies that enter the local markets to compete with incumbents, which are generally known as "competing companies."  Companies that compete with incumbents by resale are also know as "resellers."

[2] "Resale" is a legally-prescribed method of opening local telecommunications markets to competition whereby competing companies (or resellers) purchase the incumbent companies' retail telecommunications services at wholesale prices established by state utility commissions and then "resell" these services to their own retail customers.  *See* 47 U.S.C.A. §§ 251(c)(4), 252(d)(3).

[3] "Bundling" is the practice of offering multiple services to consumers in one deal, usually at a discounted price. For example, a telephone company may "bundle" local telephone service (a telecommunications service) that normally costs consumers $30 per month and Internet service (a non-telecommunications service) that normally costs $25 per month into one package that is offered to consumers at a discounted price of $45 per month (as opposed to the $55 cost if purchased separately).

Tariff. The Safe and Sound Tariff offered discounts on two of Sprint's regulated services, access lines and caller ID.

The Consumer Advocate Division of the Office of the Attorney General ("Consumer Advocate," or "Appellant") filed a petition to intervene in the Safe and Sound docket on September 5, 2003 on the basis that the Safe and Sound Tariff allegedly sought to exempt certain telecommunications services from the resale requirements of the Act without identifying support for such exemptions. The Consumer Advocate stated that the TRA should not approve the Safe and Sound Tariff, but rather should convene a contested case proceeding and permit the Consumer Advocate to intervene in that case. BellSouth also filed a petition to intervene in the Safe and Sound docket on September 11, 2003 on the basis that the Safe and Sound Tariff was similar to offers made by competitors in the industry, and based on BellSouth's own activities in providing discounted offers and packages to Tennessee Customers.

On September 16, 2003, Sprint filed its response to the Consumer Advocate's petition to intervene, stating that the Safe and Sound Tariff was not subject to the resale requirements of the Act and asking that the tariff be allowed to go into effect. Following an October 4, 2003 Authority Conference, on October 21, 2003, the TRA entered an Order Convening a Contested Case Proceeding and Granting Intervention in the Safe and Sound docket.[4] The Panel found that BellSouth and the Consumer Advocate "have demonstrated a vested interest in this matter and, therefore, voted unanimously to convene a contested case proceeding and to grant intervention to both BellSouth and the [Consumer Advocate]." The Safe and Sound panel "also found that the resale requirement is a threshold issue...[and] that it may present a case of first impression." Accordingly, the Panel ordered Sprint, BellSouth, and the Consumer Advocate to file briefs and reply briefs on the question of whether any law requires an incumbent telephone company to offer for resale at wholesale prices all or any part of a retail offering that bundles regulated telecommunications services and other non-regulated services. Sprint, BellSouth, and the Consumer Advocate submitted briefs and reply briefs on October 20, 2003 and October 27, 2003 respectively. Both Sprint and BellSouth argued that incumbent companies have no duty to make their telecommunications services available for resale at wholesale prices if such services are bundled with non-telecommunications services. The Consumer Advocate argued that such telecommunications services are subject to applicable resale requirements and, therefore, must be made available, via resale, to the customers of companies that compete with incumbent companies.[5]

---

[4] On November 21, 2003, and subsequent to the filing of all briefs responding to the legal issues presented at the October 4, 2003 Authority Conference (*see infra*), AT&T petitioned to intervene in the Safe and Sound docket. In its petition, AT&T joined the Consumer Advocate's position that approval of the Safe and Sound Tariff could result in allowing carriers to circumvent the federal resale requirements. At the December 15, 2003 Authority Conference, the Panel voted to allow AT&T to intervene in the Safe and Sound docket on a going-forward basis but did not permit AT&T to file briefs or further argue the threshold issues identified on October 6, 2003 regarding resale obligations for bundled offerings.

[5] After the parties submitted their briefs, both the Integrated Solutions and Wireless Answers panels decided, on November 24, 2003, to hold those dockets in abeyance indefinitely "to permit deliberations and a decision on the issue

(continued...)

At the Authority Conference held on December 15, 2003, the TRA decided the threshold resale issue. After finding that the Act "requires incumbent local exchange carriers to make telecommunications services that are provided by the carrier at retail available for resale at wholesale rates [and that] the telecommunications services offered as bundled in this [Safe and Sound] tariff...are retail offerings that must be available for resale," the Safe and Sound panel unanimously decided that "the tariff as it exists today cannot be approved."

On December 29, 2003, BellSouth filed a motion requesting the TRA to reconsider its Safe and Sound decision. The panel never ruled on BellSouth's motion. Rather, on December 29, 2003, Sprint filed a letter withdrawing its Safe and Sound Tariff. In the letter, Sprint asserted that the company's position, as stated in its Safe and Sound pleadings, was appropriate, and that Sprint would rather withdraw the tariff than negotiate with the intervening parties to amend the tariff to conform with the agency's Safe and Sound decision.

The remaining tariffs were submitted by BellSouth and are the subject of this consolidated appeal. We review their respective histories, to wit:

**BellSouth's Integrated Solutions Tariff**

TRA Docket No. 03-00512, *In re: Promotion to Introduce BellSouth Integrated Solutions Program Tariff Number 2003956*, opened to address the validity of a tariff filed by BellSouth on August 29, 2003 (the "Integrated Solutions Tariff"). The Consumer Advocate filed a "Complaint and Petition to Intervene" on September 12, 2003. Specifically, the Consumer Advocate asserted that BellSouth had offered no legal authority for exempting the Integrated Solutions Tariff (or at least the telecommunications services "bundled" therein) from the resale requirements of the Act. Accordingly, the Consumer Advocate asserted that the TRA should not approve the Integrated Solutions Tariff, asked that a contested case be convened, and asked that it be permitted to intervene in the contested case.

At the September 22, 2003 Authority Conference, the Panel voted to suspend the Integrated Solutions Tariff for 30 days and ordered BellSouth to respond to the Consumer Advocate's petition to intervene within seven days. On September 25, 2003, BellSouth filed the "Comments of BellSouth Telecommunications, Inc. in support of its Tariff to Introduce BellSouth Integrated Solutions and in Opposition to Position of Consumer Advocate Division." On October 21, 2003, the Panel voted to suspend the Integrated Solutions Tariff for an additional 45 days (until December 10, 2003) pending the outcome of the Safe and Sound docket. At the November 24, 2003 Authority Conference, the Panel voted to suspend the Integrated Solutions Tariff indefinitely, pending the outcome of the Safe and Sound docket. On December 8, 2003, BellSouth filed a request that the TRA hear oral argument in the Integrated Solutions docket at the regularly scheduled December 15, 2003 Authority Conference. On December 15, 2003, the Panel moved to defer

---

[5](...continued)
of federal resale requirements in [Safe and Sound]" (*see* discussion *infra*).

consideration of the Integrated Solutions Tariff until January 5, 2004. On December 29, 2003, Sprint filed its letter in the Safe and Sound docket withdrawing the Safe and Sound Tariff.

During the January 5, 2004 Authority Conference, the Panel voted to approve the Integrated Solutions Tariff on the grounds that the bundled services offered in the tariff foster competition and are individually available for resale under BellSouth's General Subscriber Tariff. The Panel voted to allow the Integrated Solutions Tariff to go into effect immediately. The Consumer Advocate asserts that this decision was in error. Specifically, it states that "although the Safe and Sound panel had ruled just three weeks earlier, on December 15, that bundled service tariffs, such as the ones at issue in [the] Safe and Sound and Integrated Solutions, must be made available for resale at wholesale prices, the Integrated Solutions panel reversed course [in reaching its decision on the Integrated Solutions Tariff]."

### BellSouth's Combined Bill Reward Tariff

TRA Docket No. 03-00624, *In re: Tariff to Establish Consumer Wireless Combined Bill Reward Offer–Tariff Number 2003-1379*, opened to address the validity of a tariff filed by BellSouth on December 3, 2004 (the "Combined Bill Reward Tariff"). The Combined Bill Reward Tariff was offered by BellSouth as a promotion set to begin on January 2, 2004 and to conclude on December 27, 2004. The Combined Bill Reward Tariff included BellSouth landline service and Cingular Wireless service.

On December 3, 2003, the Telecommunications Division requested that the Combined Bill Reward Tariff be assigned a docket number and be added to the TRA's agenda for consideration at its regularly-scheduled Authority Conference on December 15, 2003. On December 5, 2003, the Telecommunications Division sent a data request to BellSouth regarding the Combined Bill Reward Tariff's availability for resale.

On December 8, 2003, the Consumer Advocate filed its "Complaint and Petition to Intervene," in which the Consumer Advocate asserted that the Combined Bill Reward Tariff did not explicitly provide that the tariff was subject to the resale requirements of the Act. The Consumer Advocate stated that the TRA should not approve the Combined Bill Reward Tariff, asked that a contested case be convened, and asked that it be permitted to intervene in that case. On December 11, 2003, BellSouth filed "BellSouth Telecommunications, Inc.'s Response to Consumer Advocate Division's Complaint and Petition to Intervene." In this Response, BellSouth objected to the convening of a contested case on the basis that so doing would result in a delay in bringing the promotion to Tennessee customers. In the alternative, BellSouth asserted that, if the Authority was inclined to convene a contested case in the matter, then the Authority should nonetheless allow the Combined Bill Reward Tariff to go into effect pending resolution of the Consumer Advocate's Intervention.

On December 12, 2003, BellSouth filed its responses to the Telecommunications Division's data request. Therein, BellSouth explained its position that the Combined Bill Reward Tariff was

not a "bundle" to the extent that it did not offer customers two or more products at a single price and that, because the tariff does not provide regulated services at a discount, it was not available for resale. BellSouth further explained that the telecommunications services offered in the Combined Bill Reward Tariff were "available for resale, on a stand-alone basis, at the standard tariff price minus the wholesale discount established by the TRA for such services" and that there was no additional "obligation to make individual BellSouth-provided telecommunications services available for resale at a rate that is not available in the retail marketplace."

The Authority considered the Combined Bill Reward Tariff at the regularly scheduled Authority Conference on December 15, 2003. At the Conference, the Consumer Advocate stated its position that the Combined Bill Reward Tariff was dependent upon the proceedings in the Safe and Sound docket. The Consumer Advocate stated that the Combined Bill Reward Tariff presented a factual issue of whether the tariff would adversely affect competition and that BellSouth should bear the burden of proof in resolving the issue. BellSouth appeared through counsel and argued that the Combined Bill Reward docket presented only legal issues and that a contested case was not warranted. At the close of the December 15, 2003 proceeding, and with the agreement of the parties, the Panel voted to require each party to submit a brief addressing the issue of whether a contested case should be convened in the Combined Bill Reward docket. The Panel voted to suspend the Combined Bill Reward Tariff until January 5, 2004. BellSouth filed its brief on December 22, 2003, and the Consumer Advocate filed its brief on December 30, 2003.

At the January 5, 2004 Authority Conference, the Panel re-suspended the Combined Bill Reward Tariff until January 8, 2004. The Panel reconvened on January 8, 2004 to consider the Combined Bill Reward Tariff and Wireless Answers Tariff, *see* discussion *infra*. At that conference, the Panel determined that consideration of the resale issue was premature based on the fact that no reseller had expressed an interest in reselling the tariffs. The Panel voted to allow the Combined Bill Reward Tariff and the Wireless Answers Tariff to take effect immediately.

## BellSouth's Wireless Answers Tariff

TRA Docket No. 03-00554, *In re: Tariff to Establish Wireless Answers Promotion-Tariff Number 2003-1036*, opened to address the validity of a tariff filed by BellSouth on September 19, 2003 (the "Wireless Answers Tariff"). The Wireless Answers Tariff included various BellSouth landline services, voicemail, and Cingular Wireless service. On October 16, 2003, the Consumer Advocate filed its "Petition to Intervene in the Wireless Answers Docket." In its petition, the Consumer Advocate alleged that the Wireless Answers Tariff did not explicitly provide that the offering was subject to the resale requirements of the Act. As with the Integrated Solutions Tariff, the Consumer Advocate asked that the Wireless Answers Tariff not be approved, that a contested case be convened, and that the Consumer Advocate be permitted to intervene in that contested case.

The Wireless Answers Tariff was considered during the regularly scheduled Authority Conference held on October 21, 2003. The Panel voted to suspend the tariff for 45 days to allow BellSouth to respond to the Consumer Advocate's petition to intervene, and to allow for the filing

of briefs in the Safe and Sound docket. BellSouth filed its "Response of BellSouth to Petition of Consumer Advocate to Intervene" on November 12, 2003. In its Response, BellSouth objected to the convening of a contested case on the basis that the Consumer Advocate had made no showing of any need to engage in the delay involved in a contested case. The Wireless Answers Tariff was re-suspended at the November 24, 2003 Authority Conference.

At the December 15, 2003 Authority Conference, the Panel considered the Wireless Answers Tariff. At the close of that proceeding, and with the agreement of the parties, the Panel voted to require each party to submit a brief addressing the issue of whether a contested case should be convened in the Wireless Answers docket. The parties agreed that each would file a single brief in the Wireless Answers and Combined Bill Reward dockets. BellSouth filed its brief on December 22, 2003, and the Consumer Advocate filed its brief on December 30, 2003.

The Panel convened on January 8, 2004 to consider the Combined Bill Reward Tariff and the Wireless Answers Tariff. As discussed above, at this meeting, a majority of the Panel determined that consideration of the resale issue was premature on the basis that no reseller had expressed an interest in reselling these tariffs. The Panel voted to allow the Combined Bill Reward Tariff and the Wireless Answers Tariff to take effect immediately and to consider BellSouth's resale obligations only upon complaint from a reseller alleging that the telecommunications services at issue were not available for resale at the discounted bundled rates.

The TRA entered final orders in BellSouth's cases in April 2004. The Integrated Solutions Tariffs was approved by Order entered on April 22, 2004. The Wireless Answers Tariff and the Combined Bill Rewards Tariff were approved by final order entered on April 28, 2004. On the basis of the TRA's decision concerning resale obligations in the Safe and Sound case, the Consumer Advocate appeals from these final orders in the BellSouth cases. In its brief, the Consumer Advocate raises the following issues:

> I. Whether the TRA erred in holding that bundled telecommunications services do not have to be offered for resale at wholesale prices under federal law.
>
> II. Whether the TRA abused its discretion or acted arbitrarily or capriciously:
>
>> A. when the agency abandoned without explanation the process it had established to address the threshold legal issue of whether bundled telecommunications services must be offered for resale at wholesale prices;
>>
>> B. when the agency made inconsistent decisions regarding the issue of whether bundled

telecommunications services must be offered for resale at wholesale prices;

C. when the agency entered a final order approving one tariff without ever directly addressing the threshold resale question that the agency itself deemed to be the central issue in the case; and

D. when the agency entered final orders allowing two tariffs to take effect based on the TRA's finding that the Consumer Advocate had not presented a justiciable issue.

III. Whether the TRA erred in approving or allowing tariffs to take effect without making the findings required under federal law to overcome the presumption that bundled telecommunications services must be offered for resale at wholesale prices.

By letter filed August 3, 2005, BellSouth notified this Court of the legislature's amendment of Title 65 of the Tennessee Code, to wit:

On May 28, 2005, Governor Phil Bredesen signed into law 2005 Tenn. Pub. Acts 270, which amended Title 65 of the Tennessee Code by removing retail offerings of combinations or bundles of products or services from the jurisdiction of the Tennessee Regulatory Authority (the "TRA"). The legislation provides, in pertinent part, as follows:

The TRA shall retain regulatory jurisdiction established in this title for specific, individual telecommunications services. Except as provided in this section, the TRA shall not assert regulatory jurisdiction over the retail offering of combinations or bundles of products or services, whether or not such combinations or bundles of products or services are subject to a tariff or other regulatory filing with the TRA as of the effective date of this act and whether or not comprised of products or services provided by a local exchange carrier alone or with another company.

Thus, subsequent to May 28, 2005 [the effective date of the amendment], combinations of products or services, such as the

combinations at issue in these consolidated appeals are no longer subject to the regulatory jurisdiction of the TRA.

The parties to this appeal briefed the issue of mootness in the context of promotions that expire according to their terms during the pendency of an appeal in *Office of the Attorney General, Consumer Advocate and Protection Division v. The Tennessee Regulatory Authority*, Case No. M2003-01363-COA-T12-CV. Because the promotions at issue in these consolidated appeals have expired according to the terms and any new promotions will not be subject to the regulatory jurisdiction of the TRA, BellSouth submits these post-judgment facts in support of its argument that the consolidated appeals should be dismissed as moot.

(Footnote omitted).

By letter of August 8, 2005, the Consumer Advocate filed its response with this Court, to wit:

...Petitioner respectfully submits its response to Respondent BellSouth Telecommunications Inc.'s letter of August 3, 2005, regarding passage of 2005 Tenn. Pub. Acts 270....

Section 4 of Chapter No. 270 states in pertinent part:

(a)(1)...Except as provided in this section, the TRA shall not assert regulatory jurisdiction over the retail offering of combinations or bundles of products or services, whether or not such combinations or bundles of products or services are subject to a tariff or other regulatory filing with the TRA as of the effective date of this act....

* * *

(c) Nothing in this section shall affect, alter or be construed to affect or alter the applicability of state or federal antitrust law or federal telecommunications law or the TRA's authority under federal telecommunications law.

* * *

(e) Nothing in this section shall alter or expand the TRA's jurisdiction to hear complaints alleging price discrimination as prohibited by Tennessee law or anti-competitive practices regarding the provision of retail telecommunications services within its jurisdiction as its jurisdiction existed immediately prior to the effective date of this act, except to the extent that such jurisdiction is reduced pursuant to exemption by the TRA subsequent to the effective date of this act.

Thus, subsequent to [the] passage of Chapter No. 270, combinations of products or services, such as the combinations at issue in these consolidated appeals, remain subject to the regulatory jurisdiction of the Tennessee Regulatory Authority for the issues presented for review in these cases.

Following oral argument in this appeal, it became apparent that mootness (based upon the new legislation and the alleged expiration of the tariffs at issue) would be a threshold issue in this appeal. Consequently, by Order of November 16, 2005, this Court ordered the parties to file supplemental briefs and reply briefs "regarding the effect of the new legislation and the issue of mootness in these appeal. The Appellees should include any authority concerning the action of the FCC that involve the issues in this litigation."[6]

On December 16, 2005, the Consumer Advocate filed a "Motion to Consider Facts Relating to the Issue of Mootness," along with a Memorandum of Law, and other documentation in support thereof. In its Motion, the Consumer Advocate contends that two of tariffs at issue in this appeal (Wireless Answers, and Combined Bill Reward) have not expired or gone out of effect (as argued by BellSouth and the TRA). Rather, the Consumer Advocate argues that, since BellSouth has filed several "versions" of these tariffs with the TRA, which filings allegedly functioned to extend the expiration dates of the Wireless Answers Tariff to April 16, 2004 and of the Combined Bill Reward Tariff to December 31, 2005, the tariffs are still in effect and, consequently, the appeal cannot be deemed moot. The Consumer Advocate asked this Court to consider the filing of the new "versions" of the tariffs as amendments or revisions of the original tariffs, as opposed to new tariffs in and of themselves.

BellSouth and the TRA filed their responses on December 27, 2005 and argued that the subsequent filings were new tariffs, as opposed to amendments or revisions of the tariffs at issue in the appeal. Because the Consumer Advocate could allegedly have objected to the filing of these independent tariffs at the time BellSouth present them to the TRA, BellSouth and the TRA took the

---

[6] The TRA and BellSouth filed their respective supplemental briefs on December 1, 2005. The Consumer Advocate filed its supplemental brief on December 16, 2005.

stance that this Court should not consider these facts. This Court felt that, in order to review the disputed documents, the motion should be granted. The motion was granted by separate Order.

After a thorough review of the supporting documentation, which consisted of Affidavits and the actual filings with the TRA, this Court concluded that the subsequent filings were, indeed, new tariffs and not merely amendments or revisions to the existing tariffs, which are the subject of this appeal; see discussion *infra*.

Based upon our findings concerning the Consumer Advocate's "Motion to Consider Facts Relating to the Issue of Mootness," and discussed above, the specific tariffs involved in this appeal (i.e. the Wireless Answers Tariff, the Integrated Solutions Tariff, and the Combined Bill Rewards Tariff) have expired by their own terms and are no longer in effect. This fact, coupled with the amendment of T.C.A. §65-37-103 (Supp. 2005), which specifically removes these types of bundled offerings from the jurisdiction of the TRA, raises a substantial question of mootness, which we must address at the outset.[7]

---

[7] The relevant portions of T.C.A. §65-37-103 (Supp. 2005) are included in the August 3, 2005 and August 8, 2005 letters filed with this Court, *see supra*. However, in the interest of clarity, we include the full text of the statute here:

(a)(1) The Tennessee regulatory authority (TRA) shall retain regulatory jurisdiction established in this title for specific, individual telecommunications services. Except as provided in this section, the TRA shall not assert regulatory jurisdiction over the retail offering of combinations or bundles of products or services, whether or not such combinations or bundles of products or services are subject to a tariff or other regulatory filing with the TRA as of May 28, 2005, and whether or not comprised of products or services provided by a local exchange carrier alone or with another company. Nothing in this section shall require any company to engage in joint marketing with another company when it does not choose to do so.

(2) In order to transition to the changes in regulatory jurisdiction established by this part, telecommunications carriers shall provide customers with the following notice, as part of the terms and conditions for bundles or combinations: "This offer contains telecommunications services that are also available separately. Should you desire to purchase only the telecommunications services included in this offer, without additional products or services, you may purchase those telecommunications services individually at prices posted on [company website] or filed with the Tennessee Regulatory Authority."

(3) The TRA shall issue a statewide public service announcement, no less than once per year, to inform Tennesseans that telecommunications services they purchase may be available at different prices, depending upon whether they are bought individually or bought bundled, and to inform Tennesseans that functionally equivalent services may be available from providers who do not offer service using wire line technology. Scripts for these announcements shall be posted for comments from industry and consumers or their representatives before being used and shall not favor any one provider or technology over others.

(b) Unless otherwise agreed by the end-user, the terms and conditions established

(continued...)

[7](...continued)

by tariffs or other filings at the TRA for combinations or bundles of products or services shall remain effective as to end-users who have selected such combinations or bundles prior to May 28, 2005, for the duration of a term selected by the end-user. If no term was selected by the end-user for a combination or bundle of products or services, or if no term limit applied to such combination or bundle, then the terms and conditions governing that combination or bundle of products or services, at the time the end-user subscribed, shall remain in effect until the end-user agrees or elects otherwise or until the end-user is noticed of a change in terms by the service provider. Terms and conditions originally established by approved tariffs, which are changed and noticed to customers subsequent to May 28, 2005, shall bind end-users. End-users who terminate service within thirty (30) days of issuance of the notice of a change in such terms and conditions shall not be affected by such changed terms and conditions for the period between issuance of the notice and termination of service.

(c) Nothing in this section shall affect, alter or be construed to affect or alter the applicability of state or federal antitrust law or federal telecommunications law or the TRA's authority under federal telecommunications laws.

(d) Any provider of local exchange service shall permit any end-user of basic local exchange telephone service to terminate that service upon request and shall take all administrative steps necessary, including "number portability," as that term is used in 47 U.S.C. § 153(30), of the end-user's existing telephone number, to permit such end-user to begin receiving replacement service from another certificated provider in a timely manner.

(e) Nothing in this section shall alter or expand the TRA's jurisdiction to hear complaints alleging price discrimination, as prohibited by Tennessee law, or anti-competitive practices regarding the provision of retail telecommunications services within its jurisdiction as its jurisdiction existed immediately prior to May 28, 2005, except to the extent that such jurisdiction is reduced pursuant to exemption by the TRA subsequent to May 28, 2005. This chapter does not confer jurisdiction on the TRA relating to services outside its jurisdiction as of May 28, 2005. In evaluating claims of anti-competitive practices in any retail telecommunications services market, the TRA shall apply applicable federal or state law and shall consider all relevant factors, including, but not limited to, the following:

(1) The geographical and economic extent of commercial demand for functionally-equivalent services;
(2) The number and relative longevity of companies providing functionally-equivalent services;
(3) The relative gain or loss of revenues attributable to functionally-equivalent services and customers who purchase functionally-equivalent services;
(4) The relative increase or decrease in facilities-based investment attributable to providing functionally-equivalent services;
(5) The degree to which marketing, pricing and business strategies are utilized to

(continued...)

In ***Office of the Attorney General, Consumer Advocate and Protection Division v. Tennessee Regulatory Authority***, No. M2003-01363-COA-R12-CV, 2005 WL 3193684 (Tenn. Ct. App. Nov. 29. 2005), this Court discussed the law of mootness in the context of these types of cases, to wit:

> The requirements for litigation to continue are essentially the same as the requirements for litigation to begin. ***Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n***, No. M1998-00985-COA-R3-CV, 2001 WL 72342, at *5 (Tenn.Ct.App. Jan. 30, 2001) (No Tenn. R.App. P. 11 application filed). A case must remain justiciable throughout the entire course of the litigation, including any appeal. ***State v. Ely***, 48 S.W.3d 710, 716 n. 3 (Tenn.2001); ***Cashion v. Robertson***, 955 S.W.2d 60, 62-63 (Tenn.Ct.App.1997). A case is not justiciable if it does not involve a genuine, existing controversy requiring the adjudication of presently existing rights. ***State v. Brown & Williamson Tobacco Corp.***, 18 S.W.3d 186, 193 (Tenn.2000); ***Ford Consumer Fin. Co. v. Clay***, 984 S.W.2d 615, 616 (Tenn.Ct.App.1998).
>
> A moot case is one that has lost its justiciability because it no longer involves a present, ongoing controversy. ***McCanless v. Klein***, 182 Tenn. 631, 637, 188 S.W.2d 745, 747 (1945); ***County of Shelby v. McWherter***, 936 S.W.2d 923, 931 (Tenn.Ct.App.1996). A case will be considered moot if it no longer serves as a means to provide some sort of judicial relief to the prevailing party. ***Knott v. Stewart County***, 185 Tenn. 623, 626, 207 S.W.2d 337, 338-39 (1948); ***Ford Consumer Fin. Co. v. Clay***, 984 S.W.2d at 616. Determining whether a case is moot is a question of law. ***Charter Lakeside Behavioral Health Sys. v. Tennessee Health Facilities Comm'n***, 2001 WL 72342, at *5; ***Orlando Residence, Ltd. v. Nashville Lodging Co.***, No.

---

[7](...continued)

acquire or maintain revenues attributable to functionally-equivalent services and customers who purchase functionally-equivalent services; and
(6) The relationship between pricing policies and costs of functionally-equivalent services.

(f) Nothing in this section shall alter the TRA's jurisdiction to review price regulation filings or conduct rate of return ratemaking analysis, as applicable, for incumbent local exchange carrier (ILEC) telecommunications providers. Revenue for telecommunications services provided in combinations or bundles shall be considered regulated revenue for purposes of price regulation or rate of return rate analysis.

M1999-00943-COA-R3-CV, 1999 WL 1040544, at *3 (Tenn.Ct.App. Nov. 17, 1999) (No Tenn. R.App. P. 11 application filed).

When a case is determined to be moot and when it does not fit into one of the exceptions to the mootness doctrine, an appellate court should ordinarily vacate the judgment below and remand the case to the trial court with directions that it be dismissed. *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d at 617; *McIntyre v.. Traughber*, 884 S.W.2d 134, 138 (Tenn.Ct.App.1994). However, if the case falls into one of the recognized exceptions to the mootness doctrine, the appellate court has the discretion to reach the merits of the appeal in spite of the fact that the case has become moot. *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, No. M2002-02555-COA-R3-CV, 2005 WL 1111192, at *3 (Tenn.Ct.App. May 10, 2005) perm. app. denied (Tenn. Oct. 17, 2005).

The courts have recognized several exceptions to the mootness doctrine. The three most common exceptions include: issues of great public importance, issues affecting the administration of justice, and issues capable of repetition yet evading review. The courts invoke the "capable of repetition yet evading review" exception only where (1) there is a reasonable expectation that the official act that provoked the litigation will occur again, (2) there is a risk that effective judicial remedies cannot be provided in the event that the official act reoccurs, and (3) the same complaining party will be prejudiced by the official act when it reoccurs. A mere theoretical possibility that an act might reoccur is not sufficient to invoke the exception. Rather, there must be a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party. *Alliance for Native Am. Indian Rights in Tenn., Inc. v. Nicely*, 2005 WL 1111192, at *4 (citing *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1184 (1982)).

(Footnotes omitted).

In its supplemental brief, the Consumer Advocate first argues that these consolidated appeals are not moot because the tariffs involved therein are still in effect. The Consumer Advocate's argument is based upon the additional filings made with the TRA, as discussed *supra*, which it contends were merely extensions, revisions, or amendments to the existing tariffs. As discussed above, we disagree. Having reviewed these supplemental filings, we conclude that the filings constitute new, distinct tariffs. Although the offerings in the subsequent filings are identical to the original tariffs at the heart of this appeal, all subsequent filings specifically indicate that that filing

-14-

"cancels" the one immediately preceding it. Also, in discussing these subsequent filings in his Affidavit (filed in support of the Consumer Advocate's position), Robert T. Buckner, a Regulatory Analyst with the Consumer Advocate, does not state that BellSouth "extended," "revised,' or "amended" its existing tariffs. Rather, he refers to these subsequent filings as instances in which "BellSouth *filed a tariff*" (emphasis added). Although the effect of the filing of these new tariffs was to extend the effective date of the existing tariffs, from the evidence before us, we conclude that the supplemental filings are new tariffs. Accordingly, we find that the tariffs at issue in this appeal expired by their own terms during the pendency of this appeal.

The Consumer Advocate argues that, even if this Court were to find that the tariffs have expired by their own terms, the appeals are not moot because they meet at least two of the exceptions to the mootness doctrine. We will address each of the Consumer Advocate's contentions in turn.

The Consumer Advocate first asserts that the consolidated appeals present a justiciable issue that is likely to repeat yet evade review. While Tennessee courts recognize the "capable of repetition yet evading review" exception to the mootness doctrine, *State ex rel. McCormick v. Burson*, 894 S.W.2d 739, 742 (Tenn. Ct. App.1994), as discussed by this Court, in *Alliance for Native American Indian Rights in Tennessee, Inc. v. Nicely*, No. M2002-02555-COA-R3-CV, 2005 WL 1111192 (Tenn. Ct. App. May 10, 2005), perm. app. denied (Tenn. Oct. 17, 2005), courts will invoke the "capable of repetition yet evading review" exception to the mootness doctrine only in exceptional cases, to wit:

> Parties requesting a court to invoke the exception must demonstrate (1) a reasonable expectation that the official acts that provoked the litigation will occur again, (2) a risk that effective judicial remedies cannot be provided in the event that the official acts reoccur, and (3) that the same complaining party will be prejudiced by the official act when it reoccurs. A mere theoretical possibility that an act might reoccur is not sufficient to invoke the "capable of repetition yet evading review" exception. Rather, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1184, 71 L.Ed.2d 353 (1982); 1 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 2.13, at 37 (3d ed. Supp.2005).

*Id*. at \*4 (footnotes omitted).

At the time that the tariffs at issue in this case were brought before the TRA, the General Assembly had not enacted T.C.A. §65-37-103 (Supp. 2005). Consequently, at that time, incumbent telephone companies such as BellSouth were required to submit its bundled offerings to the TRA, and the TRA had the power, upon either written complaint or its own initiative, to, among other things, hear and determine whether such tariffs were reasonable. With the enactment of T.C.A.

§65-37-103 (Supp. 2005), which became effective May 28, 2005, the General Assembly removed bundled offerings (such as the ones at issue in the instant appeal) from the jurisdiction of the TRA. Consequently, since May 28, 2005, incumbent telephone companies no longer must present these bundled offerings to the TRA. Currently, the TRA may review these bundled offerings only in response to a properly filed complaint alleging price discrimination, as prohibited by Tennessee law, or anti-competitive practices regarding the provision of retail telecommunications services. *See* T.C.A. §65-37-103(e) (Supp. 2005). In light of the new legislation, the actions of the TRA, to which the Consumer Advocate takes issue in this appeal, are not capable of repetition, since these types of bundled offerings will no longer be presented to the TRA. Because the TRA no longer has regulatory jurisdiction to require tariffing of bundles or combinations of products or services, the question remains whether the Consumer Advocate has any other administrative or judicial remedies in which it may pursue the question of whether and to what extent the federal resale requirements apply to such bundles or combinations.

Because the Tennessee General Assembly has, by the enactment of T.C.A. §65-37-103 (Supp. 2005), removed these types of bundled offerings from the jurisdiction of the TRA, any recourse the Consumer Advocate may have must be found in the federal arena. However, under the Act, such recourse does exist. 47 U.S.C. §207 (2004) provides that:

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

Furthermore, 47 U.S.C. §208 provides, in relevant part, that:

> (a) Any person, any body politic, or municipal organization, or State commission, complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof, may apply to said Commission by petition which shall briefly state the facts, whereupon a statement of the complaint thus made shall be forwarded by the Commission to such common carrier, who shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time to be specified by the Commission. If such common carrier within the time specified shall make reparation for the injury alleged to have been caused, the common carrier shall be relieved of liability to the complainant only for the particular violation of law thus complained of. If such carrier or carriers shall not satisfy the complaint within the time specified or there shall appear to be any reasonable ground for investigating said

complaint, it shall be the duty of the Commission to investigate the matters complained of in such manner and by such means as it shall deem proper. No complaint shall at any time be dismissed because of the absence of direct damage to the complainant.

Clearly, under the Act, the Consumer Advocate has an avenue for review of the resale obligations of incumbent telephone carriers on these bundled products. Consequently, and in light of the fact that T.C.A. §65-37-103 precludes the possibility that the resale question on bundled tariffs will be brought before the TRA, we conclude that the consolidated cases before us do not fall under the "capable of repetition yet evading review" exception to the mootness doctrine.

The Consumer Advocate next asserts that the appeals before us are not moot because they involve "a matter of public interest and concern." The applicability of the public interest exception to the mootness doctrine was discussed by this Court in ***Dockery v. Dockery***, 559 S.W.2d 952 (Tenn. Ct. App. 1977), to wit:

> "The decision as to whether to retain a moot case in order to pass on a question of public interest lies in the discretion of the court and generally a court will determine a moot question of public importance if it feels that the value of its determination as a precedent is sufficient to overcome the rule against considering moot questions." 5 Am.Jur.2d, Appeal and Error, s 768, pp. 210-211.

> Because the general rule is to dismiss an appeal which has become moot, with the retention of such cases in the public interest being the exception to the rule, courts are inclined to refuse dismissal only under exceptional circumstances where the public interest clearly appears.

> "It is not easy to state any hard and fast rules by which questions which are of sufficient public interest to justify refusal to dismiss an appeal which has become moot . . . may be distinguished from questions which are not of such interest, since the matter rests generally in the discretion of the appellate court in each particular case."132 A.L.R. 1188-1189. However, the starting point is to determine the meaning of "public interest." Generally, public interest "means something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals."132 A.L.R. 1189. The types of issues the courts are likely to resolve despite their mootness are:
> (1) questions that are likely to arise frequently;

(2) questions involving the validity or construction of statutes;

(3) questions relating to elections;

(4) questions relating to taxation, revenue, or governmental financial affairs;

(5) questions relating to the conduct of public officers or bodies;

(6) questions involving the governmental regulation of public utilities; and

(7) questions which must necessarily become moot before the appeal can be heard.

*See* the Annotation at 132 A.L.R. 1185-1190 for cases from different jurisdictions supporting each category.

In this State a mooted issue is within the public interest if "it is one of great public importance, as where it involves a determination of public rights or interests under conditions which may be repeated at any time."*McCanless v. Klein*, *supra* 188 S.W.2d at 747.

*Id*. at 954-55.

Here, the Consumer Advocate asserts that the appeals fall within the public interest exception because they involve three of the ***Dockery*** exception examples. Specifically, the Consumer Advocate contends that the issues involve the "governmental regulation of public utilities," the "validity or construction of statutes," and issues that are "likely to arise frequently". We have previously addressed the question of whether the issues raised in this appeal are likely to arise frequently and have determined that, with the enactment of T.C.A. § 65-37-103, the TRA will no longer have jurisdiction over these bundled offerings or the question of the resale obligations arising therefrom. The Consumer Advocate's argument that these appeals contain matters of public interest because they involve the "validity or construction of statutes" is likewise tenuous. This case involves no issue of statutory construction. T.C.A. § 65-37-103 is clear on its face. The statute unambiguously states that the TRA "shall not assert regulatory jurisdiction over the retail offering of combinations or bundles of products or services...." However, even if we concede that the issues before us involve the construction and application of federal statutes and/or rules and orders of the FCC, the issue would be whether, or to what extent, those federal statutes, rules, and orders apply to bundled offerings such as those giving rise to this appeal. Following the enactment of T.C.A. § 65-37-103, these issues are no longer within the state's jurisdiction but, as discussed above, would be properly raised in the federal system. The Consumer Advocate further asserts that these appeals are not moot because they involve questions concerning the government regulation of public utilities. Although we concede that this case does involve governmental regulation of public utilities, that fact, in and of itself, is not sufficient to invoke the public interest exception to the mootness doctrine. Under the law, as it existed at the time of the introduction of these tariffs to the TRA, the TRA had jurisdiction to determine whether, and to what extent, BellSouth was obligated to offer the telecommunications services contained in the offerings for resale. Before the enactment of T.C.A.

§ 65-37-103, the TRA exercised its jurisdiction in determining that the three tariffs at issue here, and other similar tariffs, could be offered without resale. However, with the enactment of the new legislation, telecommunications providers have no ongoing obligation to submit tariffs or other regulatory filings with the TRA concerning bundled products or offerings. Consequently, with the expiration of the offerings, comes the elimination of any possibility that the circumstances underlying these appeals will be repeated in future matters before the TRA. Thus, any ruling based on the facts of the consolidated appeals would be merely theoretical in nature and would have no bearing whatsoever on new questions or disputes concerning bundled offerings and the TRA's role in regulating same because the TRA's role has been legislatively removed in these types of cases. It is well settled that courts will decline to provide judicial relief in cases that do not involve genuine existing controversies requiring the adjudication of present rights, *State ex rel. Lewis v. State*, 208 Tenn. 534, 537, 347 S.W.2d 47, 48 (1961); *Ford Consumer Fin. Co. v. Clay*, 984 S.W.2d 615, 616 (Tenn. Ct. App.1998), and will likewise decline to render declaratory judgments to decide theoretical questions or render advisory opinions. *State v. Brown & Williamson Tobacco Corp*., 18 S.W.3d 186, 193 (Tenn.2000).

In light of the new legislation and the expiration of the tariffs involved, and for the foregoing reasons, we find that these consolidated appeals are moot. Consequently, we dismiss the appeals. Costs of these appeals are assessed against the Appellant, The Consumer Advocate Division of the Office of the Attorney General, and its surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.